Index Nº:  2:23–cv–01339—JMA–SIL

# United States District Court
### for the
## EASTERN DISTRICT OF NEW YORK

FERDINAND L. COSTE, JR. a/k/a FRED COSTE. individually and on behalf of, NOVEMBER ROMEO, LLC and all aircraft owners who are to be deprived of reasonable use and access to the LONG ISLAND MACARTHUR AIRPORT, an entity and premises which the TOWN OF ISLIP claims to be fee owner,

*Plaintiffs*

—v—

TOWN OF ISLIP, ANGIE CARPENTER, Islip Town SupervisoR, individually and in her official capacity, ISLIP TOWN BOARD MEMBERS  JOHN C. COCHRANE, JR, MARY KATE MULLEN,  JOHN LORENZO, JAMES P. O'CONNOR,and JORGE GUADRÓN, each individually and in their official capacities, SHELLEY LAROSE ARKIN, COMMISSIONER, JOHN and JANE DOES # 1-10, individually and in their official capacities

*Defendants*

FEDERAL AVIATION ADMINISTRATION, as necessary party as identified by the Defendants and as its interests may appear,

# AMENDED COMPLAINT

## LAW OFFICE OF CORY H. MORRIS
*Attorney for Plaintiffs*
135 Pinelawn Road, Suite 250s
Melville NY 11747
Phone: (631) 450–2515
FAX:   (631) 223–7377
Cory.H.Morris@protonmail.com

# TABLE OF CONTENTS

Jury Trial Demanded ................................................................. 3

Preliminary Statement.............................................................. 3

Jurisdiction .............................................................................. 4

Equity Jurisdiction .................................................................. 5

Venue ...................................................................................... 5

Facts ....................................................................................... 5

    The November Romeo Property.......................................... 5

    The Halstead years ............................................................ 7

    Taxiway H (Hotel) ............................................................ 8

    Repairs of Taxiway H ...................................................... 10

    The NR tenure ................................................................. 12

    Highest and best use of the NR Property ......................... 14

    Current lease negotiations................................................ 16

    The December 14, 2022 "Term Sheet"............................. 17

    The December 22, 2022 negotiations ............................... 17

    Offer to sell the NR property to the Town ........................ 19

    Subsequent negotiations.................................................. 20

Threats by Defendant Town of Islip ....................................... 20

The Plaintiffs ......................................................................... 22

    Plaintiff Ferdinand "Fred" Coste..................................... 22

    Plaintiff  November Romeo, LLC ..................................... 23

The Defendants....................................................................... 23

    The Town of Islip ............................................................ 23

    Supervisor Angie Carpenter ............................................ 24

    The Town Board of the Town of Islip ("Town Board")........ 25

    Town of Islip Department of Aviation............................... 25

The Federal Aviation Administration (FAA) ........................... 26

Long Island MacArthur Airport (ISP/KISP) ........................... 29

ISP; History ............................................................. 33

ISP; commercial development ............................................. 34

ISP; currently ........................................................... 36

ISP is a community and regional asset.................................... 36

Long Island MacArthur Airportis"social property" ................ 37

The Town of Islip Foreign Trade Zone ................................. 39

What establishes ISP as "social property" ........................... 40

Federal regulation of Islip Town and ISP ...................... 41

"Through the Fence" activities ............................................ 43

The Town of Islip and the FAA ................................... 45

The causes of action........................................................ 48

Interference with contracts.............................................. 49

The Civil Rights Act violations ................................. 51

42 U.S.C. §1983: in general ............................................. 51

42 U.S.C. §1983: First Amendment Violations.................. 51

42 U.S.C. §1983: Unconstitutional "taking" ..................... 53

42 U.S.C. §1983: Denial of "due process" ........................... 56

42 U.S.C. § 1983: Right to Travel/Privileges or Immunities ......................................................... 57

42 U.S.C. § 1985: Conspiracy.......................................... 58

Injuries and damages .................................................... 60

Prayer for Relief.......................................................... 62

# AMENDED COMPLAINT

Plaintiffs **FERDINAND "FRED" COSTE** and **NOVEMBER ROMEO, LLC**, by and through his attorneys The Law Offices of Cory H. Morris and Victor John Yannacone jr, *of counsel*, as and for their Amended Complaint against the Defendants herein, state and allege as follows:

## JURY TRIAL DEMANDED

1. The Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRELIMINARY STATEMENT

1. Plaintiff Ferdinand "Fred" Coste, is a resident of the Town of Islip and Suffolk County facingimminent danger of serious, permanent, and irreparable economic loss, harm, and damage as a result of threats by the Defendants to limit the accessibility and use of Long Island MacArthur Airport (ISP) as a terminal destination and "hub" for General Aviation and the continued viability of ISP as an economic engine and employment generator for the residents of Eastern Long Island, NY.

2. In addition, Plaintiffs seek general, compensatory, and punitive damages, together with costs and disbursements, including reasonable attorneys' fees, in order to provide just compensation to Plaintiffs for the injuries and damage that they have suffered.

3. This is a civil action seeking Declaratory Judgment and equitable relief together with monetary relief, compensatory

damages, punitive damages, and costs and fees for violations of the Plaintiffs' rights under Article I, Section 10, clause 1 of the United States Constitution, the "contract clause" the First Amendment to the United States Constitution, the Fifth Amendment to the United States Constitution, the Fourteenth Amendment to the United States Constitution, and the Civil Rights Acts.

## JURISDICTION

4. This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 since the action involves a federal question.

5. This action involves access to a commercial airport subject to federal laws and the Rules and Regulations of Federal Agencies such as the Federal Aviation Administration (FAA)

6. Plaintiffs claim violation of Federal Constitutional Rights protected under Privileges or Immunities as well as Article I, Section 10, Clause 1, the "contracts clause."

7. Plaintiffs claim violation of Federal Constitutional Rights protected under the First, Fifth and Fourteenth Amendments

8. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9. The Civil Rights Acts—42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986 are an integrated legislative unit manifesting the intent of Congress to create a bundle of rights protected by the United States Constitution of which Plaintiffs are deprived by concerted state action of these named defendants.

## EQUITY JURISDICTION

10.   This Honorable Court is being asked to fashion an
      appropriate equitable remedy and provide equitable relief for
      the benefit of the Plaintiffs and all those associated with
      Plaintiffs who utilize Taxiway H (Hotel) as their means of
      access to and from the NR Property to ISP, to access Social
      Property.

## VENUE

11.   All the events involving the parties to this action occurred in
      Suffolk County, New York.

12.   The Plaintiff resides in Suffolk County, New York.

13.   The principal place of operation of the Defendants,
      individually and/or collectively, jointly and/or severally, is in
      Suffolk County, New York.

14.   Venue is proper in this District under 28 U.S.C. § 1391
      because the policies complained of herein and alleged more
      fully and at large in this complaint operate within the New
      York Counties located within the jurisdiction of this Court.

## FACTS

## The November Romeo Property

15.   In 2003, November Romeo, LLC, ("NR") a New York Limited
      Liability Company purchased a 4.77-acre commercial aircraft
      hangar facility ("NR Property"), immediately adjoining the
      southeast area of Long Island MacArthur Airport.

16.   The NR Property is designated on the Suffolk County Tax
      Map as 0500-Section 128.00 Block 01.00 and Lot 12.003 and
      its street address is 1640 Lincoln Avenue, Holbrook, NY

17. The present owner of the NR Property is November Romeo, LLC, ("NR") a New York Limited Liability Company.

18. Plaintiff Ferdinand "Fred" Coste is the Managing Member of NR.

19. NR is the owner of a Commercial Through the Fence ("CTTF") operation("CTTO") at ISP, with access to ISP via Hotel Taxiway.

20. NR pays over $55,000 per year in real property taxes to the Town of Islip.

21. The NR property is improved with Airplane storage hangars which were first constructed in 1969 and certified by the Town of Islip.

22. Since 1969, Plaintiffs and owners of light aircraft utilizing the NR Property have accessed ISP by way of the aircraft taxiway known as Taxiway Hotel ("Taxiway H") a paved parcel measuring 23,600 square feet connecting the NR Property, its General Aviation facilities to ISP.

23. There is no available hangar space for the light planes of General Aviation at the Long Island MacArthur Airport.

24. NR Property provides space and access, nothing else, to Long Island MacArthur Airport from a strip of land shared with the United States Civil Air Patrol.

25. The Civil Air Patrol accesses Long Island MacArthur Airport (ISP)  by way of Hotel taxiway. In addition, CAP accesses Taxiway Hotel by using an equivalent distance —  the length of taxiway Hotel itself — of NR property to access the taxiway, without charge.

26. By constructing and providing hangar space and support facilities for the light planes of General Aviation, Plaintiffs

perform a significant public service and contribute meaningfully to the Regional Economy.

## The Halstead years

27. In 1966, Paul C. Halstead, ("Halstead") NR's predecessor in title, purchased a 4.77-acre parcel of land (the "Halstead Property") adjacent to the southeast corner of ISP.

28. In 1968, Halstead negotiated airport access with then ISP Airport Manager Alfred Werner.

29. In 1968 and 1971 respectively, Halstead built two 10 unit "T" hangar buildings for aircraft storage for each of which the Town issued Certificates of Occupancy

30. On February 13, 1969, Halstead, as Lessee, entered into a twenty (20) year Lease Agreement ("1969 Halstead Lease Agreement") with the Town of Islip, as Lessor, "to construct and use a taxiway for aircraft…with right of ingress and egress to [ISP] over said premise by aircraft, personnel and maintenance equipment" from the adjoining Halstead Property then, as now, used for aircraft hangar storage for the annual sum of $1,100 payable in monthly increments.

31. At Article 13, Paragraph N, the 1969 Halstead Lease Agreement provides that "[t]he Lessee shall have the right to ingress and egress from the demised premises, which right shall extend to Lessee's employees, guests invitees and patrons and tenants."

32. At that time the Halstead Property contained aircraft hangar space and the aircraft hangar tenants would utilize Taxiway H.

33. In 2003, Plaintiffs purchased the NR Property from Halstead.

34. The Agreement between Paul C. Halstead and the Town of Islip was extended indefinitely by a letter from Airport Manager Alfred Werner to Paul Halstead in June, 1990.

35. Over the years, the Town Board of the Town of Islip has never demonstrated any interest in Taxiway H.

36. Fred Coste has requested formal agreements be entered into concerning Taxiway H with every successive Airport Commissioner since Alfred E. Werner.

## Taxiway H (Hotel)

37. The 1969 Halstead Agreement also specified in Article Four that the Lessee agreed "…at its sole expense to construct and maintain a taxiway…in accordance with design plans and specifications to be submitted by the Lessee to the Board of Commissioners of [Long Island MacArthur Airport (ISP)] and to be approved…Said design plans and specifications…shall comply with the standards of the FAA and New York State Transportation Authority or any other governmental agency."

38. The 1969 Halstead Lease Agreement further provided in Articles Four and Six that the Lessee would maintain and keep in good repair the Taxiway and provide for public liability and property damage insurance.

39. On August 22, 1969, the 1969 Halstead Lease Agreement was amended to modify the description of the leased Taxiway.

40. During 1969, Defendant Town of Islip constructed the existing taxiway measuring approximately 550 feet in length and 40 feet in width connecting the threshold of ISP Runway 28 and terminating at the western boarder of the Halstead property. That taxiway was also named for "Halstead" and

became known as "Hotel" (the letter H in the phonetic alphabet).

41. On October 31, 1969 the 1969 Halstead Lease Agreement was further amended to commence the ten-year Lease Term on August 1, 1969.

42. During that same time period, Halstead offered access to ISP through his property to the Civil Air Patrol ("CAP")whosebase of operation is located on an otherwise inaccessible section of airport property.

43. Halstead and later the Plaintiffs provided CAP the ability to access Halstead Taxiway.

44. By Letter to Halstead dated, June 20, 1990, Town of Islip Airport Commissioner Alfred E. Werner, confirmed that the Town "will continue to grant you ingress and egress to the Airport on a month-to-month basis through the "Halstead Taxi Way" with at least a six month notice of cancellation should that need arise" and increased the annual fee to $3,000 per year payable in monthly increments.

45. At the present time, Taxiway H (Hotel) connects the main aeronautical facilities (runways, etc.) of ISP with the NR property and six outdoor aircraft parking positions known as "tie-downs" on Airport property adjacent to the NR property.

46. Taxiway Hotel does not connect to any other Airport tenant's facilities or any other area of the Airport. Taxiway Hotel is open to all Airport users.

47. NR and CAP are presently the primary users of Hotel Taxiway.

48. According to Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, Taxiway H offers 528 feet of

frontage on each side of the taxiway and there are almost 75 acres available for development on each side of the taxiway.

49. According to Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, there is high demand for aircraft storage in the region, however, the Town of Islip has done nothing to develop the property on both sides of Hotel Taxiway and further the growth of ISP as a General Aviation Airport.

50. In March 2021, an informally agreement was reached between the Town of Islip and November Romeo whereby November Romeo paid the Town $1,220 per month for access to Taxiway Hotel (increased annually by CPI), and $80 per month, per tie-down, for the use of the Town's six tie-downs on Airport property, however, no written agreement was executed.

## Repairs of Taxiway H

51. The Town demands that Hotel Taxiway to be improved according to FAA standards at an estimated cost of $150,000, even though there exists a mechanism by which the Town could approach the FAA with our reasonable request to improve the Taxiway with a 2" asphalt cap, costing approximately $60,000, which would more than support the Group 1, small aircraft users of the taxiway.

52. On August 19, 2022, NR obtained a quote from L.K. McLean Associates, P.C. ("August 19, 2020 L.K. McLean Quote") of $51,800 solely for the design and drawings necessary to provide civil engineering services to rebuild Hotel Taxiway.

53. On November 22, 2022, NR submitted to Defendant Town of Islip  a Proposal to refurbish Hotel Taxiway by the "Recap Method" in full accord with the August 3, 2022 Antonucci Letter to include:

> Spot patching of any problem areas;
> Saw cut and patch major cracks, if any;
> Saw cut existing asphalt to maintain existing grade at both ends of the taxiway, as well as the crossing of the airport security road;
> Asphalt cement minor cracks and seams; and
> Apply a 2" NYS 6F Asphalt mix over the entire area.

54. Previously, on November 27, 2019, NR provided Defendant Town of Islip with an estimate from Fifth Avenue Paving, Inc., a reputable local asphalt company experienced in airport work, to perform Recap work on Hotel Taxiway for a cost of $47,000.00.

55. In response to ISP's demand that the 23,000 sq. ft. Taxiway repair be based on fully engineered drawings performed at prevailing wage rates, NR forwarded to Defendant Town of Islip, correspondence with David M. Cohen, FAA Compliance Program Manager in which Mr.  Cohen states "in order for the FAA to consider approving the action you discuss…the action must be proposed by, or under, the auspices of the Town."

56. To date NR has received no confirmation whether the Town of Islip has ever submitted the NR November 22, 2022 Proposal to refurbish Hotel Taxiway to the FAA.

57. Defendant Town of Islip has cited FAA Construction Standard, FAA AC 150/5370-10H which is applicable only to pavement serving aircraft greater than 30,000 lbs. far

exceeding the 12,500 lb. maximum weight of aircraft stored at November Romeo hangars and, in addition,the standard is only mandatory for federally funded projects.

58. Upon information and belief, "FAA standards" are not legally binding but merely suggestive and advisory.

59. "FAA Standards" could well include the 2-inch cap proposed by NR, if submitted by the airport sponsor and approved by FAA. If FAA were to review the proposal Mr. Cohen indicated it could be approved if submitted by the airport sponsor.

60. Upon information and belief, the FAA has never proposed a specific method or methods for rehabilitating Taxiway Hotel.

61. The proposal by NR for rehabilitating Taxiway Hotel by adding an industry standardtwo-inch cap placed upon the already engineered taxiway by a reliable asphalt roadway contractor is preferable and more cost-effective than destruction of a surface and substrate that has withstood the test of time for decades.

62. There is no risk involved if FAA is willing to approve the rehabilitation represented by a cap on a stable substrate.

63. Plaintiff sought information through the Defendants regarding the FAA and Town decision(s), Freedom of Information Requests, that are pending or denied.

## The NR tenure

64. NR has improved the NR Property with installations that include 2 electric security gates, the first at ISP and two more modern hangar buildings.

65. In 2008, NR constructed a new 9-unit aviation "T" hangar building of approximately 10,500 sq. ft.  and a larger 5-unit

box aviation hangar of approximately 19,145 sq. ft. with mezzanine and radiant heating throughout. All four buildings on the NR Property have certificates of occupancy issued by the Defendants, Town of Islip, for such use.

66. NR caters to a niche that other ISP tenants do not offer the General Aviation community.

67. NR has never, and still does not compete with "on-airport" FBOs.

68. Defendants, individually and collectively, know and have reason to know that "With the exception of safety issues, the FAA does not regulate FBOs or approve their leases, the document notes." See Curt Epstein, *FAA Clarifies FBO Regulatory Policies,* AIN Online (December 11, 2017), http://bit.ly/3Maj90O.

69. Further, "If [the FAA] receives a complaint, the agency might review a lease to determine if it is consistent with the airport sponsor's federal obligations, though the FAA encourages direct communication between users, sponsors, and FBOs before involving the agency" *Id.*

70. NR has offered the NR Property for sale to the Town of Islip.

71. Upon information and belief, a proposal to acquire the NR Property had been in the FAA budget several times over the last 50 years, however, the offer to sell the property to the Town of Islip has been ignored.

72. In December of 2018, Good Deeds Development offered to purchase the NR Property for $4,250,000 contingent upon NR obtaining a new access agreement with Town of Islip.

73. The offer was accepted but cannot close until access to Taxiway H has been properly established.

## Highest and best use of the NR Property

74.  The original real estate sale listing of the NR Property, described it as,

"4 Buildings/ two approximately 13,000 sf each, one approximately 10,000 sf and one approximately 19,000 sf   newly constructed aircraft use.   Second Wind Airpark is the premier hangar facility at Long Island MacArthur Airport.   Featuring two newly constructed buildings, the facility offers both "T" hangars for personal aircraft and intermediate sized box hangars for the personal/corporate aircraft fleet..   Personal aircraft hangars consist of nested T-hangars that are capable of storing anything from Cessna 150's through light twin models such as Beech Barons and Piper Senecas.   All T hangars have electric bi-fold doors, ample lighting and internet, cable TV and telephone service is available.   Features: near-by maintenance facility, 100LL and JetA available.   All box hangars have Schweiss electric bi-fold doors with automatic latching.   24/7 access to site by personal electric gate key.   Pilot lounge with Cable TV, telephone and Internet access.   Internet, Cable TV, Telephone available in all hangers.



(These four photos constitute Exhibit "1")

Adjacent to Long Island Mac Arthur Airport.  Strategically located along one of Long Island's busiest commercial corridors Veterans Memorial Highway



(This singular picture is annexed hereto as Exhibit "2")

75. Because of its unique location in proximity to the Long Island MacArthur Airport (ISP), the highest and best use of the NR property is to support General Aviation as a regional economic resource and an integral significant element of the Regional Economic System — a regional economic determinant.

76. Failure to permit reasonable unrestricted access to Taxiway H (Hotel) as a route for General Aviation aircraft to access the commercial runways of Long Island MacArthur Airport (ISP) creates an imminent danger of  serious, permanent, and irreparable damage to all the residents of the Town of Islip and Suffolk County who depend upon the accessibility and use of Long Island MacArthur Airport (ISP) as a terminal destination and "hub" for General Aviation and as an economic engine and employment generator for the residents of Eastern Long Island and the Economy of Suffolk County, New York.

## Current lease negotiations

77. In 2020, Plaintiffs commissioned an appraisal of Hotel Taxiway which analyzed lease fees for tenants at ISP, Gabreski Airport (FOK), and Republic/Farmingdale Airport (FRG) by Michael Haberman & Associates.

78. The Haberman Appraisal identified 5 comparable Leases:

> The Town of Islip's 40- year lease to the Department of Military and Naval Affairs at ISP at $ 0.58/ sq. ft.;
> The County of Suffolk's 25- year lease to SheltAir Aviation at FOK at $ 0.39/ sq. ft.;
> New York State's 20-year lease to SheltAir Aviation at FRG at $ 0.38/ sq. ft.;
> The Town of Islip's 50- year lease to SheltAir Aviation at ISP at $ 0.42/sq. ft.; and
> New York State's original 20-year lease, now expired, with Northeastern Air Management at FRG at $ 0.42/ sq. ft.

79. Based upon the Haberman Appraisal, Defendant Town of Islip   increased the NR license fee for Hotel Taxiway use to $ 0.62/ sq. ft. or $1,264.97 monthly even though there was still no extension of the License Term or a License Agreement

80. During the time that NR has owned the NR Property, upon information and belief, there have been no TSA (Transportation Security Agency), FAA or security concerns with respect to Plaintiffs or the NR Property.

81. The FAA has never questioned or challenged the CTTF of NR.

82. Defendant Town of Islip knows, or with the exercise of due diligence should know, that no buyer will finance purchase of the NR Property without a long-term lease.

83. The Haberman Appraisal established that other airport tenants have agreements with terms of 40 to 50 years.

## The December 14, 2022 "Term Sheet"

84. On December 14, 2022 presented Plaintiffs with a Term Sheet and an accompanying email advising that they had already "discussed the key terms with the FAA [and] are not comfortable making substantive changes to this term sheet."

85. The December 14, 2022 Term Sheet contains the following provisions:

> "3. …Taxiway H will be rehabilitated in compliance with FAA Airport Design Standards, including but not limited to Advisory Circular No. 150/5320-6G, and to accommodate aircraft with a MTOW of 12,500 lbs.  [NR] shall have 60 days after execution of the agreement to elect one of two options:
>
> a. reimburse Town for all design, engineering, construction and ancillary costs for the work associated with Taxiway H rehabilitation…; or
>
> b. doing the work itself.  ***
>
> "12.  Compensation to the Town will be as follows:
>
> a. Reimbursement for full cost of rehabilitation of Taxiway H (see above), if applicable.
>
> b. Monthly access fee payments in the amount of $800 per hangar and $175 per tie down space located on [NR's] property;
>
> c. All monthly payments will be subject to standard escalation clauses over the term consistent with escalation clauses in on-airport leases.

86. Counsel for the Town of Islip states that any NR Access Agreement must contain provisions assuring that the "end users of [NR's] facility pay more than they would pay if they were operating on the airport."

## The December 22, 2022 negotiations

87. According to Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, On December 22, 2022, the Town of Islip  proposed a new agreement and fee structure to November Romeo under which the Town of Islip would

execute three agreements: (a) an agreement for the rehabilitation of Taxiway Hotel, (b) a lease for the on-Airport tie-down spaces utilizing the NR Parcel for access, and (c) a through-the-fence access agreement.

88. According to Robert Schneider, the Town of Islip DeputyCommissioner of Aviation, the Town of Islip proposal reflected the Town's "obligation to ensure that on-Airport operators are not placed in an economically disadvantaged position relative to through-the-fence operators like [Coste]."

89. According to Robert Schneider, the Town of Islip DeputyCommissioner of Aviation, "Instead of the per-hangar and per-tiedown rate, we proposed the Town would (a) charge Coste the standard on-Airport ground lease rate ($0.88 per square foot, per year) for the leased tie-down spaces and (b) apply the same rate to the full area of the Coste property to calculate an appropriate access fee under the through-the-fence access agreement.

90. NR owns the property upon which the Town of Islip is trying to charge as well as collect real property taxes.

91. The other Airport tenants do not have the real estate taxes and carrying charges that off airport property owners have.

92. According to Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, "Under FAA policy, Coste is not entitled to access to the Airport and there is "no limit" to what the Town may charge as an access fee."

93. Town of Islip claims the FAA will allow the Taxiway closure.

94. Upon information and belief, there is no established "FAA policy" which covers the unique situation presented by Taxiway Hotel and its associated property owned by NR.

95. The Town of Islip has not identified what, if any, "Federal Requirements" the Town must be in "compliance" with which would be violated by continuing the present Agreement with some modification of the rentand repair of Taxiway Hotel.

96. On December 1, 2022, Defendant Town of Islip sent NR an invoice which summarily increased the monthly use fee for Hotel Taxiway and six (6) aircraft tie downs from $1,794.97 to $29,514.00 over 1,518% based on $800 per month for each of the 34 Hangars owned by NR together with $175 per month for each of 6 aircraft tie downs and the Taxiway H (Hotel) monthly rent of $1,264.27.

97. Defendant Town of Islip has insisted that NR rebuild Taxiway H (Hotel) at their estimated cost of $150,000. An alternative proposal by NR to repave Taxiway H (Hotel) with a 2" asphalt cap at its own expense has been rejected.

## Offer to sell the NR property to the Town

98. According to Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, On January 12, 2023, the Town indicated it would be interested in a purchase, but only at a fair market value which based on an internal estimate of the property value was $1.5 to $2.0 million subject to a formal appraisal to be paid for by NR.

99. Rather than condemn the property, or exercise eminent domain, the Town of Islip created legal hurdles under the guise of FAA regulation in response to Coste's inquiries.

## Subsequent negotiations

100. According to Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, The parties eventually reached tentative agreement on the lease rate ($0.88 per square foot per year) for the tie-down area.

## THREATS BY DEFENDANT TOWN OF ISLIP

101. Defendant Town of Islip threatenimminent action to limit access by barricading Taxiway H (Hotel) which has provided airport access for 53 years to aviation tenants of the NR Property including the Civil Air Patrol ("CAP"), and a group of volunteer auxiliary members of the United States Air Force who perform air and ground emergency service missions.

102. Taxiway H (Hotel) **existed in its present state for the last 52 years and** shows no signs of collapse, erosion or drainage problems.

103. Taxiway H accommodates only Group 1 aircraft (about 50 total) and is 15 feet wider than required in FAA Advisory Circular AC# 150/5320-6G.

104. The Long Island Group Headquarters of Civil Air Patrol, a volunteer auxiliary of the United States Air Force, a direct airport tenant, also accesses Hotel Taxiway and ISP across the Plaintiffs'CTTF property at no charge.

105. The CAP auxiliary United States Air Force volunteers will soon be left scrambling for viable alternative aviation storage space shouldDefendant Town of Islipbarricade Hotel Taxiway access as it threatens.

106. Upon information and belief, there is no publicly available on-airport hangar space available similar to that offered by Plaintiffs on the NR Property.

107. Access to the main runways of (ISP) from the NR Property for NR tenants and the CAP has been quietlyand peaceably enjoyed for more than 53 years. According to Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, "We do not intend to close this access until at least July 13, 2023 unless circumstances change (for example, an FAA action requiring the Town to do so)."

108. The Defendant Town of Islip refuses to furnish such guidance or communications without litigation.

109. Shortly after Mr. Coste inquired of the FAA, the Defendant Town of Islip demanded a fifteen (15)-fold rent increase.

110. Defendant Town of Islip has refused certain Freedom of Information Law requests filed by Coste (by Janice Whelan, Esq.) on the grounds a litigation hold notice was filed.

111. Defendant Town of Islip has not furnished Coste the communications from the FAA at issue in this litigation.

112. Defendant Town of Islip since lessened its fifteen (15)-fold rent increase once Plaintiff served a litigation hold notice.

113. The serious, permanent, and irreparable injury, damage, and harm from denying aircraft access to Taxiway H (Hotel) from the hangar, maintenance and storage facilities along the East side of Smithtown Avenue, the westerly boundary of ISP.

114. Equity mandates a remedy due to the very real likelihood of serious, permanent, and irreparable damage to the Plaintiffs and all those associated with Plaintiffs who utilize Taxiway H (Hotel) as their means of access to and from the NR Property

as well as the entire General Aviationcommunity of private
pilots and owners of light aircraft,

115. Plaintiffs and all those associated with Plaintiffs who utilize
Taxiway H (Hotel) as their means of access to and from the
NR Property to ISP have no adequate remedy at law.

## THE PLAINTIFFS

## Plaintiff Ferdinand "Fred" Coste

116. Plaintiff Ferdinand "Fred" Coste has been actively involved
with the ISP aviation community for more than 53 years.

117. Plaintiff Ferdinand "Fred" Coste is familiar with the rules
and regulations of the Federal Aviation Administration
("FAA").

118. Plaintiff Ferdinand "Fred" Costebegan work at Long Island
MacArthur Airport (ISP) as a grounds keeper employed by
the Town of Islip.

119. Since that time, Plaintiff Ferdinand "Fred" Coste has worked
with several ISP Fixed Base Operators.

120. Plaintiff Ferdinand "Fred" Coste owns property adjacent to
and which utilizes Taxiway H (Hotel).

121. Plaintiff Ferdinand "Fred" Coste owns the Coste Insurance
Agency,

122. Plaintiff Ferdinand "Fred" Coste is Treasurer of the Holbrook
Chamber of Commerce and the Long Island Early Flyers
Education Foundation.

123. Plaintiff Ferdinand "Fred" Costeowned and operated Second
Wind Aviation Safety Foundation, ("Second Wind") a 501(c)(3)
not- for- profit corporation from 1992 to 2005.  Second Wind

held the designation of FAA Part 41 flight school which sponsored the Sachem High School Aviation Program and graduated over 200 licensed private pilots.

124. Plaintiff Ferdinand "Fred" Coste served as a Cadet Commander of Civil Air Patrol Suffolk Composite Squadron VI.

## Plaintiff  November Romeo, LLC

125. November Romeo, LLC, ("NR") is a New York Limited Liability Company duly organized and existing under the laws of the State of New York.

126. November Romeo, LLC, is the present owner of the NR Property.

127. Plaintiffs perform a significant and necessary public service in providing hangar space and support at the NR Property for the light aircraft of General Aviation and furnishing them access to ISP over Taxiway H (Hotel) through their CTTF operation.

## THE DEFENDANTS

## The Town of Islip

128. The Town of Islip was established in 1688 by a royal charter from the King of England through his Royal Governor. Like the other colonial charter townships on eastern Long Island, the Town of Islip eventually became one of the 933 townships operating by virtue of and under the terms of the New York State Town Law within the 62 Counties of New York State.

129. According to Supervisor Angie Carpenter, the Town of Islip is "the 3rd largest town in New York State."

130. Islip is governed by a Town Supervisor and four council members all elected on an at-large basis. All of the elected officials serve staggered four-year terms and elections are held on odd years.

131. The town board has jurisdiction over governmental affairs within the town's boundaries, excluding incorporated villages which have their own local governments.

132. As part of the settlement reached in 2020 of a 2018 lawsuit alleging that the Town of Islip violated the Voting Rights Act of 1965 by maintaining a discriminatory at-large council system where only one person of color has ever been elected to the Town Board whileone-third of Islip's population is Hispanic, the at-large system will be abolished and replaced by four council districts by 2023.

133. The Town of Islip holds title to real property as a trustee for the benefit, use, and enjoyment of the Islip Town residents.

## Supervisor Angie Carpenter

134. According to the website maintained by Defendant Town of Islip, https://islipny.gov/government/supervisor/town-supervisor,incorporated fully herein:

> "On March 1st 2015 Angie Carpenter was sworn in as the first woman Supervisor of the Town of Islip in its more than 300-year history, to fill the vacancy of Islip Town Supervisor, created when Tom Croci was elected to the New York State Senate."

135. In November 2015, Angie Carpenter was elected to serve a full four-year term as the Islip Town Supervisor.

136. Angie Carpenter is still the Supervisor of the Town of Islip.

## The Town Board of the Town of Islip ("Town Board")

137. The Town Board which has jurisdiction over governmental affairs within the town's boundaries, excluding incorporated villages which have their own local governments at the present time has four members elected at large.

138. Councilman Jorge Guadrón is a member of the Town Board of the Town of Islip.Jorge Guadrón is a named Defendant.

139. Councilman John C. Cochrane, Jr.is a member of the Town Board of the Town of Islip.John C. Cochrane is a named Defendant.

140. Councilwoman Mary Kate Mullenis or was a member of the Town Board of the Town of Islip at the time of these events.Mary Kate Mullen is a named Defendant.

141. Councilman  John Lorenzo, upon information and belief, replaced Mary Kate Mullen as a member of the Town Board of the Town of Islip. Accordingly,  John Lorenzo is a named Defendant.

142. Councilman James P. O'Connoris a member of the Town Board of the Town of Islip.  James P. O'Connor is a named Defendant.

143. The Town of Islip Department of Aviation is directly responsible for the operation of Long Island MacArthur Airport (ISP).

## Town of Islip Department of Aviation

144. The  Town of Islip Department of Aviation is led by the Commissioner of Aviation and Transportation, Shelley LaRose-Arken and Deputy Commissioner Rob Schneider.

145. The Town of Islip Department of Aviation and the Town
     Board "manage and steward" the airport and its Departments
     which include Airport Operations, Custodial, Fire Rescue,
     Law Enforcement, Maintenance, Construction, and
     Administration.

146. Shelley LaRose-Arken is a named Defendant.

## THE FEDERAL AVIATION ADMINISTRATION (FAA)

147. According to its official website, the Mission of the FAA "is to
     provide the safest, most efficient aerospace system in the
     world."

148. According to its official website,
     https://www.faa.gov/about/mission, the FAA is "accountable to
     the American public and our aviation stakeholders."

149. According to Defendants, Town of Islip, it is "severely limited
     by the legal obligations as the owner and operator of the
     Airport that it owes to the federal government, in particular
     the Federal Aviation Administration (FAA)."

150. According to its official website,
     https://www.faa.gov/airports/airport_compliance, "Airport
     sponsors agree to certain obligations when they accept Federal
     grant funds or Federal property transfers for airport purposes.
     The FAA enforces these obligations through its Airport
     Compliance Program**."**

151. According to its official website,
     https://www.faa.gov/airports/airport_compliance,"The FAA's
     Airport Compliance Program ensures airport sponsors comply
     with the Federal obligations they assume when they accept
     Federal grant funds or the transfer of Federal property for

airport purposes. The program serves to protect the public interest in civil aviation and ensure compliance with applicable Federal laws, FAA rules, and policies."

152. It is under the pretext of FAA compliance that the Defendants wish to punish Plaintiff for its independent inquiry of the FAA and, *inter alia,* acquire Plaintiff's property at a discount without exercising condemnation or eminent domain.

153. According to its official website, https://www.faa.gov/aiurports/airport_compliance, "When Airport owners and operators accept Federal grants, they agree to preserve and operate their facilities in a safe and efficient manner and comply with certain conditions and assurances. These obligations can span different airport development grant programs, including the Federal Aid to Airports Program (FAAP), the Airport Development Aid Program (ADAP), and the Airport Improvement Program (AIP)."

154. According to its official website, https://www.faa.gov/airports/airport_compliance, "some of the major obligations an airport owner can incur when accepting a Federal airport development grant.
- Prohibition of exclusive rights
- Use of airport revenue
- Proper maintenance and operation of airport facilities
- Protection of approaches
- Keeping good title of airport property
- Compatible land use

- Availability of fair and reasonable terms without unjust discrimination
- Adhering to the approved airport layout plan
- Self-sustainability
- Sale or disposal of Federally acquired property
- Preserving rights and powers
- Using acceptable accounting and record-keeping systems
- Compliance with civil rights requirements"

155. According to its official website, https://www.faa.gov/airports/airport_compliance, "Runway Safety continues to be one of the FAA's highest priorities and encompasses pilots, air traffic controllers and airport vehicle drivers."

156. Defendants claim, in their Memorandum of Law in Opposition to Plaintiff's Order to Show Cause that the arrangement between Town of Islip and the Defendants Town of Islip "is unacceptable today under the strictly enforced Federal Requirements." *Id.* at P. 5.

157. Defendants, Town of Islip, claims "the through the fence agreement [with Plaintiffs] does not comply with the FAA policy" *Id.* at P. 4.

158. Defendants, Town of Islip, claims "Town would be forced to close Taxiway in its entirety or risk violating Federal Requirements" *Id.* at P. 6.

159. Plaintiff offered proposals, that Defendants, Town of Islip, claims puts Defendants at risk of violating FAA policy. *Id.* at P. 8.

160. In reality, these Defendants are using the FAA regulation as pretextual to obtain Plaintiff's property at a steep discount without exercising condemnation or eminent domain.

161. According to its official website, "https://www.faa.gov/airports/airport_compliance, the FAA "offers guidance, resources and expertise" about Runway Safety.

162. The FAA would not allow closure of Taxiway Hotel as Defendants Town of Islip suggest has to occur because of the Plaintiffs through-the-fence arrangement.

## LONG ISLAND MACARTHUR AIRPORT (ISP/KISP)

163. Long Island MacArthur Airport and the New York Air Route Traffic Control Center, located in the Town of Islip, are both in the hamlet of Ronkonkoma.

164. Long Island MacArthur airport ("ISP") is currently owned and operated by the Town of Islip, in the County of Suffolk, New York.

165. The IATA airport code designation for Long Island MacArthur Airport is ISP.

166. The ICAO airport code designation for Long Island MacArthur Airport is KISP.

167. ISP houses three mainfixed based operators: Modern Aviation, Excelaire/Hawthorne, and Mid Island Air, which offer a full range of general aviation services.

168. There are also flight schools based on the field: ATP Flight School, Heritage Flight Academy, and Mid Island Air Service.

169. The Suffolk County Police ("SCPD") Aviation Section has a law enforcement and MEDEVAC helicopter based at ISP. The

base is staffed 24 hours a day by police pilots, as well as flight paramedics employed by the Stony Brook University Medical Center.

170. ISP is bounded on the North by Railroad Avenue and the Long Island Railroad Main Line; on the West by Smithtown Avenue; on the South by Veterans' Memorial Highway (NY 454); and on the East by Lincoln Avenue.

171. ISP covers an area of 1,311 acres; has three runways, the longest 7,006 feet, and two helipads.



(Picture annexed hereto as Exhibit "3")



(Picture annexed hereto as Exhibit "4")

172. According to the Town of Islip website athttps://islipny.gov/insideislip/airport#glance, ISP offers service from three major US domestic air carriers: American Airlines, Frontier Airlines, and Southwest Airlines providing

non-stop service to 12 cities nonstop, with connections to hundreds of destinations worldwide.

173. Long Island MacArthur Airport is centrally located between Montauk Point (72 miles East), and Manhattan (60 miles West), providing a local option for passengers from townships both East and West of the Town of Islip, enabling the airport to accommodate the three million residents of Nassau and Suffolk counties.

174. Long Island MacArthur Airport is conveniently accessible from three major East-West thoroughfares. It is one mile North of Sunrise Highway; four miles South of the Long Island Expressway; and connects directly to Veteran's Memorial Highway.

175. The LIRR Ronkonkoma Station is also less than two miles from ISP's main terminal, providing passengers with the ability to travel to and from NYC easily, affordably and efficiently.

176. In the 50 years since Long Island MacArthur Airport introduced scheduled air service, the airport has become a major transportation hub and economic engine of the region.

177. In 2011, the FAA designated ISP an Official Metro Airport, and it is now grouped with LaGuardia (LGA), Kennedy International (JFK) and Newark (NWK) in travel and informational searches for New York airports.

178. ISP does not share the congested airspace of the city-centric airports and has an exceptional record of on-time performance.

179. Long Island MacArthur Airport serves as a regional transportation center for the entire Long Island community,

generating $600 million in economic impact and more than six thousand (6,000) jobs directly and indirectly.

180. According to Supervisor Angie Carpenter, "our own Islip MacArthur Airport … provides many job opportunities." https://islipny.gov/departments/long-island-macarthur-airport

181. According to the Town of Islip website at https://islipny.gov/insideislip/airport#glance, incorporated fully herein: "ISP serves 1.6 million passengers annually and employs 6000 people directly and indirectly, with a $16 million annual operating budget and an economic impact of $600 million to the region and local economy."

## ISP; History

182. In April 1942, four months after the bombing of Pearl Harbor, the Town of Islip entered into contract with the federal government to build an airfield on Town-owned land for potential military purposes during the war. Within months, the Civil Aeronautics Administration (CAA) – predecessor to today's Federal Aviation Administration (FAA) – constructed three paved runways, and, at the suggestion of Charles H. Duryea, a local elected official, named the airport MacArthur Airport, after General Douglas MacArthur, General of the Army. The airfield had been originally named Islip Airport

183. The airport took one year to build, cost $1.5 million, and consisted of three 5,000-foot runways.

184. In 1944, Lockheed Aircraft Corporation built the first hangar at the airport.

185. Five years later, the U.S. Army Air Corps. returned the airport to the control of the Town of Islip, the Town built the

airport's first terminal building preparing the way for commercial service.

186. Throughout the 1950s, the Sperry Corporation conducted aerospace research at the airport.

187. In 1955, a United Airlines test flight crashed killing three crew members. It was alleged to be the only fatality to happen during a flight at ISP.

188. Upon information and belief, there were two other fatal crashes at ISP aside from the 1955 United Airlines test flight.

## ISP; commercial development

189. In 1960, Allegheny Airlines was the first commercial airline to offer scheduled flights to Boston, Philadelphia and Washington. The General Douglas MacArthur Terminal was completed in 1966, and a few years later, American Airlines began operating non-stop flights to Chicago.

190. In 2004, MacArthur Airport embarked on an expansion that included a dedicated Southwest Airlines terminal constructed by the airline at a cost of $65 million.

191. Phase one of the 2004 expansion included four gates to be used by Southwest Airlines, as well as space for shops and restaurants.

192. Phase two of the 2004 expansion, completed in November 2006, added four more gates for a total of eight new gates. Prior to the expansion project, passengers had to pass back through the ticketing area of the airport to reach the baggage claim area. With completion of Phase two, the new concourse provided a more convenient exit point to baggage claim, ground transportation and the airport's roadway exit.

193. A major proponent of the airport's 2004 – 2006 expansion projects was Peter J. McGowan, then, Islip Town Supervisor. When completed, the new concourse was named after McGowan. However, when in March 2006 he resigned from office, the terminal was re-named Veterans Memorial Concourse in homage to Long Island's distinction as home to more military veterans than almost any other community in the Unites States.

194. In 2006, the 3rd Battalion (Assault), 142nd Aviation Regiment moved its headquarters to MacArthur Airport, bringing its Sikorsky UH-60L Black Hawk helicopters.

195. In November 2009, ISP became the only airport in the Tri-state region to offer free wireless throughout the entire terminal and in the courtesy cell phone parking lot.

196. Construction of a new control tower started in 2008 and was completed in 2010, replacing the former tower, which was built in 1962.

197. While no further expansion is currently planned for the interior of the terminal building, numerous exterior infrastructure projects are underway, or planned,

198. The Federal Aviation Administration is in the final phase of construction for a new FAA Control Tower to replace the outdated tower built in the early sixties. The control tower was completed in 2011.

199. In 2010, a new state-of-the-art Fuel Farm substantially increased the airport's on-site jet fuel supplies.

200. In 2011, the FAA designated MacArthur Airport an Official Metro Airport, meaning it is now grouped with LaGuardia,

JFK and Newark in travel and informational searches for
New York airports.

## ISP; currently

201. According to the Federal Aviation Administration (FAA) at
https://www.faa.gov/isp, "Long Island Mac Arthur airport, in
the town of Islip (pronounced "Ice-lip"), New York, is a
medium sized airport located on Long Island, New York,
about 45 miles east of New York City. It has some air carrier
traffic, but primarily serves the corporate, business and
general aviation communities."

202. According to David Winzelberg in the *Long Island Business
News* on July 8, 2022, Long Island MacArthur Airport will get
$14.11 million from the Federal Aviation Administration, as
part of federal infrastructure funding from the Airport
Terminal Program, one of three aviation programs created by
the bipartisan Infrastructure Law, which provides $1 billion
annually for five years for airport terminal grants.

## ISP is a community and regional asset

203. According to the Town of Islip website at
https://islipny.gov/insideislip/airport#glance, ISP is "An Asset
of the Town of Islip, *for all of Long Island*"(emphasis added).

204. According to the Town of Islip website at
https://islipny.gov/insideislip/airport#glance, ISP works "to
continue to grow and improve as an asset to Long Islanders,"
and claimed that, "The airport will complete by 2020-2021,
approximately, $37.9 million in federally and locally funded
planning and capital projects, including but not limited to: …

> Rehabilitation of Runway 15R-33L and associated … Taxiway E&F
> Rehabilitation Design & Construction …
> Rehabilitation of Taxiway S Design & Construction.

All of which have been made or are in progress without the use of taxpayer
dollars."

205. According to the Town of Islip website at
https://islipny.gov/insideislip/airport#glance, "The airport
applies for and regularly receives, grants issued through the
FAA's Airport Capital Improvement Program (ACIP).
Occasionally, New York State Grants, Empire State
Development Grant (ESD), IDA Grants, and Department of
Homeland Security (DHS) Grants may become available to
support the airport's capital needs."

206. According to the Town of Islip website at
https://islipny.gov/insideislip/airport#glance,

> "Approximately 90% of the airport's revenue is generated from
> vehicle parking, landing fees, airport property leases, and terminal
> rentals and concessions."
>
> "Airport parking and airport terminal concessions are the largest
> revenue generators producing $3.5 million and $6M annually.
> Other large income sources include airport leases $2.9 million;
> landing fees $2.7 million and fuel flow fees $900 million."
>
> "The airport continues to recruit non-traditional sources of income
> through movie shoots, special events and leasing vacant properties.
> This enables the airport to remain solvent and self-sufficient at no
> burden to local taxpayers."

## LONG ISLAND MACARTHUR AIRPORTIS "SOCIAL PROPERTY"

207. Social Property is property which has become vested with the
public interest to such an extent that the property itself can
be considered dedicated to public use.

208. The right to travel is recognized in the United States
Constitution as is applicable to the states. See

*Crandall* v. *Nevada,* 6 Wall. 35 (1868), *Paul* v. *Virginia,* 8 Wall. 168, 180 (1869), ==*Twining* v. *New Jersey,* 211 U. S. 78, 97== (1908)and *Ward* v. *Maryland,* 12 Wall. 418, 430 (1871),

209. A commercial airport is a major economic element of any regional environmental system in which it is located and operates.

210. A commercial airport from which passenger services provided to other commercial airports throughout the United States and in some cases foreign countries operates in the public interest.

211. Long Island MacArthur Airport is not merely a proprietary commercial real estate investment of the Town of Islip, it has become social property.

212. As social property, constitutional protections attach when state actors intend to levy, alter, prohibit or restrict its use and access, especially under the pretext of federal regulation.

213. The Town of Islip, as the nominal owner of property so vested with the public interest as is Long Island MacArthur Airport, has become a trustee  of the property for the benefit, use and enjoyment of the general public.

214. Defendants, Town of Islip, claim FAA regulation served as the pretext to demand a fifteen (15)-fold rent increase from Plaintiffs for access to the Long Island MacArthur Airport.

215. The Town of Islip as the nominal owner of Long Island MacArthur Airport is required to exercise its rights as nominal owners for the accomplishment of purposes which may not be dictated by self-interest but which must consider the public interest in the facility which includes access to and from the NR Property to ISP over Taxiway H (Hotel).

## The Town of Islip Foreign Trade Zone

216. The Town of Islip has established a Foreign Trade Zone Authority ("FTZ") on land adjacent to Long Island MacArthur Airport (ISP).

217. According to its website at [https://islipftz.com/why-ftz](https://islipftz.com/why-ftz),

> "[T]he Town of Islip Foreign Trade Zone Authority is one of the Island's most valuable resources for companies that engage in international trade."

> "There are many benefits to being located in a FTZ which make a FTZ a more profitable way for local businesses to reduce costs and compete in the international marketplace."

218. The Town of Islip FTZ Authority has 435,000 square feet of prime warehouse and office space located on fifty-two acres of land.



(Picture annexed hereto as Exhibit "5")

219. There is direct access from the Islip Foreign Trade Zone Authority into Long Island MacArthur Airport.

220. The complex is situated along the Veterans Highway business corridorto Long Island Mac Arthur Airport and near major rail and roadways.

221. The Town of Islip Foreign Trade Zone Authority is Long Island's only industrial park with a foreign trade zone designation.

## What establishes ISP as "social property"

222. Long Island MacArthur Airport is so vested with the public interest that it has become "social property" so that it must be maintained in the public interest and not merely as a revenue source or Automated Teller Machine (ATM) for the Town of Islip.

223. Long Island MacArthur Airport is a major element of the Long Island infrastructure and a regional economic engine.

224. ISP is a regional economic engine upon which the well-being of the residents of Suffolk County depend to a substantial extent.

225. ISP and its General Aviation facilities and amenities are critical to encouraging employers to make substantial investments within Suffolk County and improve the potential for full employment of Suffolk County residents.

226. Long Island MacArthur Airport is so vested with the public interest it has become "social property" and the nominal owner, the Town of Islip one of the nine hundred and thirty-three (933)townships in the State of New York, must maintain and manage the property in the public interest which in this case means facilitating access from the hangar area on the NR Property to the main runways of the airport.

227. There is no question that access to the Long Island
MacArthur Airport implicates the constitutional right to,
among other things, travel from one state to another. *United
States* v. *Guest,* 383 U. S. 745, 757-758 (1966).

228. Plaintiffs in their operation and management of a General
Aviation facility at the NR Property provide a unique and
singular public service vital to the public health, safety and
welfare.

## FEDERAL REGULATION OF ISLIP TOWN AND ISP

229. According to Robert Schneider, the Town of Islip
DeputyCommissioner of Aviation, "the Town is subject to
regulation bythe Federal Aviation Administration (FAA) and
the Transportation Security Administration(TSA). Among
other requirements, the Town must comply with certain FAA
safety andoperational regulations set forth at 14 C.F.R. Part
139 and TSA security regulations set forth at 49C.F.R. Part
1542.

230. According to Robert Schneider, the Town of Islip
DeputyCommissioner of Aviation, "the Town of Islip is also
subject to additional regulation as a condition of accepting
grant funds from the FAA for improvement of the Airport.
These obligations are set by statute and areknown in the
industry as the "Grant Assurances." As the recipient of FAA
funds for improvement of the Airport, the Town is known as
the "sponsor" of the Airport."

231. Upon information and belief, the FAA developed the Grant
Assurance system as a means of keeping control on taxpayer

funding in an effort to prevent a corrupt Airport Sponsor from misusing taxpayer dollars.

232. According to Robert Schneider, the Town of Islip DeputyCommissioner of Aviation, "Among other requirements under the Grant Assurances, the Town mustmaintain operational control over the Airport, including ensuring safety and security at the Airportand maintaining control over the Airport and its boundary fence to ensure the safety and securityof operations on the 1,311 acres of Airport property and of the 1.6 million passengers usingthe Airport annually. In addition, the Town is required to treat on-Airport users "withoutunjust discrimination," which generally means that the Town must offer the same economic termsand conditions to users making similar use of Airport property."

233. According to Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, "Failure to comply with the Federal Requirements could subject the Town to enforcement action by the FAA and ultimately could result in civil penalties, injunctions, andthe loss of federal grant eligibility. The loss of federal grant eligibility would have asignificant negative effect on the Town's financial ability to operate theAirport. "

234. Upon information and belief, the Town of Islip has been less than frugal in spending associated with airport operations.

235. The Town of Islip maintains an airport police force comprised of uniformed Peace Officers patrolling not only the terminal building, but the entire airport property all while the professional Suffolk County Police Department maintains an active precinct at the airport, along with the Suffolk County

Police Aviation Unit, and the SCPD Emergency Services and Crime Scene personnel based at the airport.

236. Upon information and belief, the Town of Islip, is an "Airport Sponsor,"it maintains no emergency medical services (EMS) at Long Island MacArthur Airport (ISP) relying primarily on local volunteer fire departments and ambulance companies to cover incidents at Long Island MacArthur Airport (ISP) without reimbursement.

237. Defendants, Town of Islip, claims "the purpose for the increase in fees is to ensure that the Town maintains compliance with Federal Requirements" Defendants' Memorandum of Law In Opposition to Plaintiff's Order to Show Cause at P. 16.

238. Defendants, Town of Islip, states that the Town is acting to, among other things, demand a fifteen(15)-fold rent increase or shut down access CAP/Plaintiff's access to the MacArthur Airport because the FAA requires it.

239. Plaintiff avers that the Defendants, Town of Islip, representations concerning the FAA are inaccurate and will be borne out by testimonial if not documentary evidence.

## "Through the Fence" activities

240. According to Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, The FAA has published policies that apply to "through-the-fence" activities to ensure a sponsor's compliance with the Federal Requirements.

241. According to FAA Order 5190.6B, Change 2, Para. 12.7., the FAA defines "through-the-fence" arrangements as those that

"permit[] access to the airfield by aircraft based on land adjacent to, but not a part of, the airport property."

242. According to FAA Order 5190.6B, Change 2, Para. 12.7(g)(1); (f)., the FAA warns that improperly structured through-the-fence arrangements may result in violations of Federal Requirements and the loss of federal grant eligibility.

243. According to FAA Regulations, an Airport Sponsor may charge a fee for access "through the fence" from outside the airport property.

244. While the FAA suggests, but does not mandate, that the sponsor should execute a written agreement and ensure the "fee to gain access to the airfield should reflect the airport fees charged to similarly situated on-airport tenants and aeronautical users,"the clear and plain purpose of that suggestion is that the "Through the Fence" (TTF) operator should have comparable operating expenses as the tenants of the actual airport property.

245. Upon information and belief, the FAA intent is to establish parity in fees charged by an aeronautical business operating from off the airport property with those operating within the airport property.

246. Defendants, Town of Islip, claims "FAA regulates through he fence activities" Defendants' Memorandum of Law In Opposition to Plaintiff's Order to Show Cause at P. 22.

247. Defendants, Town of Islip, not the FAA, made the demand that Plaintiff pay a fifteen(15)-fold rent increase at the threat of closing Plaintiff's Airport access.

248. Otherwise, FAA told Defendants Town of Islip that Plaintiff's rent should increase fifteen(15)-fold or it could close access.

249. Upon information and belief, Defendants have established a fee for Taxiway Hotel based on the gross receipts collected by the off-airport operator without regard to the operating expenses of the off airport aeronautical business.

250. At the present time and throughout negations between the parties to this litigation, the FAA has not taken any action against the Town of Islip related to the activities of the Plaintiffs with respect to Taxiway Hotel.

251. At the present time and throughout negations between the parties to this litigation, the FAA has not threatened any specific action against the Town of Islip related to the activities of the Plaintiffs with respect to Taxiway Hotel.

252. At the present time, and in response to actual litigation, Defendants Town of Islip have not acted out their threat to close Taxiway Hotel.

## THE TOWN OF ISLIP AND THE FAA

253. On August 3, 2022, the Town provided NR with a letter from Danielle Antonucci ("August 3, 2022 Antonucci Letter"), the U.S. Department of Transportation Airport Certification Safety Inspector to the Town of Islip detailing the results of an airport-wide inspection which identified thirteen (13) items which required correction throughout ISP including the following comment about Hotel Taxiway:

254. "The pavement on Taxiway "H" has cracks and surface variations, including pavement cracks and deterioration that produces loose aggregate or other contaminants.  Grass and weeds are growing within the pavement cracks.  The airport

needs to develop a plan to repair the pavement at this location." \*\*\* Planned Correction Date:  December 31, 2022.

255. The Antonucci letter did not mandate repair of Hotel Taxiway by 12/31/22. It simply requested a plan to repair the taxiway by that date, without the requirement of a completion date.

256. According to Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, the Town of Islip insisted that NR bear the entire cost of rehabilitating Taxiway Hotel .

257. NR did not object to rehabilitating the existing taxiway but did object to ripping up the existing taxiway and rebuilding it from scratch.

258. According to Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, as part of an e-mail exchange with Fred Coste,, on September 23, 2022, Janine Abyad, an FAA Civil Engineer/PFC Specialist is alleged to have said that the Town "may be in violation of its grant assurances because it is not charging you high enough access fees" and that FAA would be "working with the airport to investigate the matter to ensure that the airport is in compliance with the grant assurances."

259. According to Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, on September 23, 2022, Mr. Cohen informed Mr. Coste that the rehabilitation of Taxiway Hotel would have to comply with FAA regulations, including "requirements for hold position signs, markings, pavement condition, and construction work, which are relevant to any proposal concerning the rehabilitation and/or reconstruction of Taxiway H."

260. Mr. Cohen allegedly notified Mr. Coste that the Town could be in violation of the Federal Requirements if FAA determines the Town is "charging you and/or your tenants too little vis a vis on airport tenants."

261. The Town of Islip has never provided the Plaintiffs with any meaningful information about its rental and use agreements at ISP or demonstrated comparative rates from which the reasonableness of those charged NR might be determined.

262. Plaintiff sought information from Defendants Town of Islip that responded that a litigation hold notice prevented it from producing records responsive to a Freedom of Information Law Request.

263. According to Robert Schneider, the Town of Islip DeputyCommissioner of Aviation, "in early October 2022, Mr. Cohen reached out to the Town regarding November Romeo's operations. Mr. Cohen expressed concern that (a) November Romeo was operating without a formal written agreement, and thus the FAA had no information about the Town's ability to ensure security, safety, and other operational issues at the Airport, and (b) the access fee currently being paid by November Romeo pursuant to the informal arrangement was insufficient and could violate Federal Requirements. Mr. Cohen stated that November Romeo's continued operation under the existing informal, unwritten arrangement presented a potential violation of the Federal Requirements and requested that the Town resolve these issues no later than December 1, 2022."

264. Upon information and belief, the FAA has never formally notified the Town of Islip of any violations of its Rules and Regulations with respect to Taxiway Hotel.

265. Defendants Town of Islip blame the FAA as a pretextual basis to violate Plaintiff's constitutional and contractual rights.

266. Defendants, Town of Islip, claims the FAA's demand for a written through the fence agreement justifies Defendants demand for fifteen (15) times rent increase at the threat of closing Plaintiff's access to the Airport. Defendants' Memorandum of Law In Opposition to Plaintiff's Order to Show Cause at P. 24.

267. Defendants, Town of Islip, claims the FAA is responsible for the determination that "the access fee currently being paid by Plaintiffs is insufficient" *Id.*

268. Defendants, Town of Islip, and not the FAA made the determination that "the access fee currently being paid by Plaintiffs…could violate Federal Requirements." *Id.*

269. There is no determination in writing from the FAA that "the access fee currently being paid by Plaintiffs…could violate Federal Requirements." *Id.*

## THE CAUSES OF ACTION

270. To the extent necessary to support each of the causes of action hereinafter set forth and allege, Plaintiffs repeat, reiterate and reallege the appropriate foregoing paragraphs of this complaint commencing with the Section designated "Facts," ¶¶ 15 and concluding with the final paragraph of the Section designated "Town of Islip and the FAA" ¶ 269.

## Interference with contracts

271. Interfering with public access to Taxiway H (Hotel) by aircraft utilizing hangar space and facilities located on the NR Property violatesArticle I, Section 10, Clause 1 of the United States Constitution, commonly referred to as the "Contract Clause,"

272. Interfering with public access to Taxiway H (Hotel) by aircraft utilizing hangar space and facilities located on the NR Property is unreasonable and does not further any proper public purpose.

273. Any contract or modification of a contract, express or implied, by the Town of Islip regarding access by aircraft from the NR Property to ISP over and by means of Taxiway H (Hotel) must be "in the public interest" and "protect the lives, health, morals, comfort and general welfare of the people."

274. Any contract or modification by the Town of Islip regarding access by aircraft from the NR Property to ISP over and by means of Taxiway H requires good faith and fair dealing.

275. Any regulation by a state actor of contracts, whether involving public or private parties, must generally be reasonably designed and appropriately tailored to achieve a legitimate public purpose.

276. The unilateral actions of the Defendant Town of Islip with respect to, and its treatment of, Taxiway H as it affects the Plaintiffs and all those associated with Plaintiffs who utilize Taxiway H (Hotel) as their means of access to and from the NR Property to ISP is unconscionable and violates the "Contract Clause" of the United States Constitution.

277. Defendants, individually and collectively, action towards Mr. Coste is harming all those reliant upon Taxiway H and was effected through Defendant Shelley LaRose-Arken, Commissioner, and approved overtly and implicitly through ANGIE CARPENTER, Town Supervisor, Jorge Guadrón, Mary Kate Mullen/ John Lorenzo, John C. Cochrane, Jr., and James P. O'Connor, as members of the Islip Town Board.

278. Defendants, Town of Islip, through its agent Robert Schneider and its representations to this Court, state and thus name the FAA as the entity responsible for its actions.

279. The decision by Defendants, individually and collectively, to close Taxiway H was made while knowing and having reason to know that its closure impacted Plaintiffs and those who rely upon Plaintiff in various contractual relations.

280. To the extent Defendants Town of Islip, individually and collectively, name the FAA as the entity responsible, the FAA is named as a Defendant for such actions.

281. Actions were taken by Defendants, with an effort to deprive Plaintiffs and others similarly situated, through Defendant Shelley LaRose-Arken, Commissioner, and with authority given by ANGIE CARPENTER, Town Supervisor, Jorge Guadrón, Mary Kate Mullen/ John Lorenzo,John C. Cochrane, Jr., and James P. O'Connor, as members of the Islip Town Board, to close Taxiway H as retaliation for Mr. Coste speaking to the FAA on matters of public concern involving ISP and safety regulations.

## THE CIVIL RIGHTS ACT VIOLATIONS

282. With respect to its operation of Long Island MacArthur
Airport (ISP) and its relations with the Federal Aviation
Administration ("FAA"), the Defendants, individually and/or
collectively, jointly and/or severally, are "state actors."

## 42 U.S.C. §1983: in general

283. Title 42 U.S.C. § 1983 provides that "every person who, under
color of [state law] subjects ... any citizen of the United States
... to the deprivation of any rights, privileges, or immunities
secured by the [United States] Constitution and laws, shall be
liable to the party injured."

284. Defendants, individually and/or collectively, jointly and/or
severally, acting under color of State law violated the
Constitutional rights of Plaintiffs and all those associated
with Plaintiffs who utilize Taxiway H (Hotel) as their means
of access to and from the NR Property to ISPand threaten to
cause serious, permanent, and irreparable damage to the
public interest in General Aviation.

## 42 U.S.C. §1983: First Amendment Violations

285. Email communications and public statements made in
support of General Aviation and the rights of those owning
and operating the relatively light aircraft which are used in
General Aviationare"protected speech" under the First
Amendment of the United States Constitution.

286. There is a clear causal connection between the protected
speech of Plaintiff Ferdinand "Fred" Costeand the threat by
Defendants, individually and/or collectively, jointly and/or

severally, to deny access to ISP from the NR Property over Taxiway H.

287. Specifically, Mr. Coste spoke to persons at the FAA concerning the repair of Taxiway H, potential waste and misuse at ISP.

288. Specifically, Mr. Coste, individually and through counsel, made Freedom of Information Law requests and inquired of Defendants actions, individually and collectively, to address potential waste, misuse or potential illegality at ISP.

289. The First Amendment to the United States Constitution prohibits Defendants, individually and/or collectively, jointly and/or severally, from subjecting Plaintiff Ferdinand "Fred" Costeto "retaliatory actions" after the fact for having engaged in protected speech.

290. Plaintiff Ferdinand "Fred" Coste is not a governmental actor or independent contractor of Defendants.

291. The protected speech of the Plaintiff Ferdinand "Fred" Coste is not likely to disrupt the legitimate activities of the Defendants, individually and/or collectively, jointly and/or severally in their management of ISP nor impair or diminish their title to Long Island MacArthur Airport.

292. Mr. Coste's speech to persons at the FAA concerning ISP was not a complaint although FAA reported it as a complaint to ISP when, in fact, Mr. Coste had every intention of working collaboratively to resolve issues, actual or perceived, by the FAA regarding ISP.

293. Upon information and belief, ISP is continually having FAA compliance issues separate and apart from Mr. Coste, Taxiway H and Plaintiffs' property.

294. ISP, by and through its agent Robert Schneider, claims that its FAA compliance issues relating to Plaintiffs are because of the FAA and not because of its decisions.

295. The protected speech of Plaintiff Ferdinand "Fred" Coste has become the basis for punitive action by the Defendants, individually and/or collectively, jointly and/or severally, and now rises to the level of "public concern" entitled to constitutional protection.

296. That Mr. Coste spoke out was the reason for demand that increased Mr. Coste's monthly payment by over fifteen (15) times what he has paid for years.

297. Defendants, Town of Islip, claims the FAA was responsible for the demand that Plaintiff pay fifteen (15) times the rent he has paid for years or lose access to the Airport.

298. Advocating free public access to, from, and over Taxiway Hotel for the light planes of the General Aviation community has resulted in the punitive and discriminatory threat to deny access to ISP from the NR Property over Taxiway H.

## <mark>42 U.S.C. §1983:</mark> Unconstitutional "taking"

299. Plaintiffs and all those associated with Plaintiff who utilize Taxiway H (Hotel) as their means of access to and from the NR Propertyto ISP have a "protected property interest" in their access to Taxiway H which may not be taken by the Defendants, individually and/or collectively, jointly and/or severally, in violation of the Fifth and Fourteenth Amendments of the United States Constitution unless such taking is for a public purpose.

300. Defendant Town of Islip intended to "take" the NR Property by invading the rights of Plaintiffs and all those associated with Plaintiff who utilize Taxiway H (Hotel) as their means of access to and from the NR Property to ISP with the threat of an unreasonable denial of access to Taxiway H.

301. There is no substantial credible evidence that the threat to deny Plaintiffs and all those associated with Plaintiffs who utilize Taxiway H (Hotel) as their means of access to and from the NR Property to ISP using Taxiway H (Hotel) is a valid exercise of the police power of the Town of Islip in order to protect the health, safety and welfare of Town of Islip residents.

302. Defendants' threat to deny Plaintiffs and all those associated with Plaintiffs who utilize Taxiway H (Hotel) as their means of access to and from the NR Property to ISP destroys the use of the NR Property in the public interest of General Aviation without any substantial credible evidence to support the Defendants' actions.

303. Although Defendants' threat to deny Plaintiffs and all those associated with Plaintiffs who utilize Taxiway H (Hotel) as their means of access to and from the NR Property to ISP does not deprive Plaintiffs of all beneficial use of the NR Property, it is still a "taking."

304. Defendants' threat to deny Plaintiffs and all those associated with Plaintiffs who utilize Taxiway H (Hotel) as their means of access to and from the NR Property to ISP, in addition to destroying the use of the NR Property in the public interest of General Aviation, has a significant economic effect on the

Region and the reasonable investment-backed expectations of all the business interests in the Region.

305. On December 1, 2022, Defendant Town of Islip sent NR an invoice which summarily increased the monthly use fee for Hotel Taxiway and six (6) aircraft tie downs from $1,794.97 to $29,514.00 — over 1,518% —$800 per month for each of the 34 Hangars owned by NR together with $175 per month for each of 6 aircraft tie downs and the Taxiway H monthly rent of $1,264.27.

306. In addition, Defendant Town of Islip insists that NR rebuild Taxiway H at their estimated cost of $150,000.

307. An alternative proposal by NR to repave Taxiway H at its own expense has been rejected.

308. Defendants, individually and collectively, state that FAA has rejected the NR proposal to repave Taxiway H.

309. Defendants' threat to deny Plaintiffs and all those associated with Plaintiffs who utilize Taxiway H (Hotel) as their means of access to and from the NR Property to ISP is a regulatory taking — an inverse condemnation —by government action that impedes and restricts the highest and best use of the NR Property as a means to facilitate General Aviation as a contributor to the Regional Economy.

310. Defendants, to the extent that the FAA is blamed for this, individually and collectively took these actions and, insofar as Defendants claim the FAA is responsible, Plaintiff seeks declaratory relief through this Honorable Court against the FAA in its official capacity as requested below.

311. Although Defendants' threat to deny Plaintiffs and all those associated with Plaintiffs who utilize Taxiway H as their

means of access to and from the NR Property to ISP may not deprive the Plaintiffs of all beneficial use, nevertheless it is a regulatory taking and a form of inverse condemnation in violation of Plaintiffs' rights guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution.

## 42 U.S.C. §1983: Denial of "due process"

312. Defendants never provided Plaintiffs with any meaningful notice and a pre-deprivation hearing before threatening to summarily deny Plaintiffs and all those associated with Plaintiffs who utilize Taxiway H (Hotel) as their means of access to and from the NR Property to ISP.

313. Should Defendants be successful in their efforts to deny Plaintiffs and all those associated with Plaintiffs who utilize Taxiway H (Hotel) as their means of access to and from the NR Property to ISP access Taxiway H, it will diminish, degrade, and may destroy the use of the NR Property in the public interest of General Aviation without any substantial credible evidence to support the Defendants' actions.

314. Defendants, individually and/or collectively, jointly and/or severally, took their precipitous action of threatening to deny access to ISP from the NR Property over Taxiway H (Hotel) by the Plaintiffs and all those associated with Plaintiff who utilized Taxiway H (Hotel) from the NR Property without affording those affected the due process guaranteed them under the Fifth and Fourteenth Amendments to the United States Constitution,

315. Defendant Town of Islip has failed to provide any substantial credible evidence upon which their threat to deny access to ISP from the NR Property over Taxiway H (Hotel) was based.

316. Defendants, individually and collectively, refuse to provide records supporting its claims that the FAA is responsible for its decision-making in whole or in part.

317. The Plaintiffs and all those associated with Plaintiff who utilize Taxiway H (Hotel) as their means of access to and from the NR Property have been afforded no equitable means of obtaining such access and have all thereby been denied the due process guaranteed them under the Fifth and Fourteenth Amendments to the United States Constitution.

318. Defendants, individually and/or collectively, jointly and/or severally, intended to and did cause injury and damage to the Plaintiffs.

319. Defendants, individually and/or collectively, jointly and/or severally, use the FAA regulations as a prextext for its discriminatory acts and desire to acquire Plaintiff's property at a steep discount.

## ==42 U.S.C. § 1983:== Right to Travel/Privileges or Immunities

320. Plaintiffs, and those who rely upon Plaintiffs, will be denied and unreasonably taxed for their constitutional right to travel from one State to another.

321. There is recognition that freedom to travel throughout the United States has long been recognized as a basic right under the Constitution.

322. Defendants, individually and collectively, have worked to collectively deprive Plaintiffs and tenants thereof to limit

their ability to freely travel based upon their ownership of a taxiway.

## <mark>42 U.S.C. § 1985:</mark> Conspiracy

323. Defendants, individually and/or collectively, jointly and/or severally, conspired to deprive Plaintiffs and all those associated with Plaintiff who utilize Taxiway H (Hotel) as their means of access to and from the NR Property to ISP of unrestricted access to ISP by unilaterally imposing exaggerated fees and costs for such access and imposing exorbitant fees on the General Aviation owners of light aircraft who utilize the facilities at the NR Property done as a result of Plaintiff Coste's speech and discussions with the FAA.

324. Upon information and belief, the overt meeting of the minds between and among the Defendants, individually and/or collectively, jointly and/or severally, as evidenced by meetings, correspondence and electronic communications including social media:

325. To wit, all Defendants, in their several capacities, have participated in electronic meetings, carbon copied on several communications were directly involved in retaliating against Mr. Coste for his speech on matters of public concern generally and through the FAA and, in direct response to what was characterized by the FAA as a complaint by Mr. Coste, did decidedly act to deprive Plaintiff of property interest and access to Social Property.

326. In so doing, Defendants, individually and collectively, wished to harm Plaintiff and those associated with Plaintiff in restricting access to Taxiway H.

327. According to Defendants Town of Islip, and sworn affidavit of Robert Schneider, the FAA is responsible for some if not all of these actions.

328. Assuming that Robert Schneider has not perjured himself, the FAA is the driving force and responsible for all of these determinations and is thus a necessary party for whom against Plaintiff seeks injunctive relief.

329. Accordingly, Defendants restriction of Taxiway H would not only impact Plaintiff and those who rely on Plaintiff for General Aviation but would impact Civil Air Patrol.

330. Defendants, who individually and collectively, decided through Defendant Shelley LaRose-Arken, commissioner, and obtain approval through ANGIE CARPENTER, Town Supervisor, Jorge Guadrón, Mary Kate Mullen/ John Lorenzo, John C. Cochrane, Jr., and James P. O'Connor, as members of the Islip Town Board, to close Taxiway H as retaliation for protected speech by Plaintiff Ferdinand "Fred" Coste.

331. Defendants, who individually and collectively, decided through Defendant Shelley LaRose-Arken, commissioner, and obtain approval through ANGIE CARPENTER, Town Supervisor, Jorge Guadrón, Mary Kate Mullen, John C. Cochrane, Jr., and James P. O'Connor, as members of the Islip Town Board, to close Taxiway H unless Coste agreed to pay a king's ransom, an exorbitant fee amount to taking, as a monthly toll for access to Social Property.

332. Defendants, individually and/or collectively, jointly and/or severally, have demonstrated an invidious discriminatory animus against Plaintiffs and, in so doing, wish to harm all the owners of General Aviation light aircraft who utilize the facilities at the NR Property and Taxiway H.

### INJURIES AND DAMAGES

333. In times of emergency when lives are at stake and minutes count immediate access to aircraft is required.

334. Taxiway H provides access to emergency aircraft such as Angel Fight (http://www.angelflightsoars.org/), search and rescue, United States Air Force Auxiliary and other various degrees of volunteer, public interest and law enforcement/law enforcement related aviation activities.

335. The NR Property provides an ancillary facility which utilizes the commercial runways of Long Island MacArthur Airport without interfering in any way with the operation of the airport as a commercial transportation hub, ISP, and without imposing any burden on the commercial facility.

336. The only link between the general aviation facilities at the NR Property and ISP is Taxiway H.

337. Without access to Taxiway H, there is no ready access for emergency service aircraft to the runways of ISP necessary for them to initiate their lifesaving missions.

338. Plaintiffs and all those associated with Plaintiffs who utilize Taxiway H (Hotel) as their means of access to and from the NR Property to ISPhave suffered and will continue to suffer serious, permanent, and irreparable damage as a result of the willful, intentional, and flagrant disregard of their

constitutional rights by the Defendants, individually and/or collectively, jointly and/or severally.

339. Defendants, who individually and collectively, decided through Defendant Shelley LaRose-Arken, commissioner, and obtained approval, implicit and direct, through ANGIE CARPENTER, Town Supervisor, Jorge Guadrón, Mary Kate Mullen/ John Lorenzo , John C. Cochrane, Jr., and James P. O'Connor, as members of the Islip Town Board, to close Taxiway H do so knowing that the Social Property these Defendants prevent access to carries an imminent threat of harm, may violate the FAA and likely disrupts significant public and business interests at ISP.

340. Defendants FAA, as per the sworn affidavit of Robert Schneider, is responsible for demanding usurious rents at the threat of closing Airport access and thus has equally interfered in Plaintiff's enjoyment to property, right to contract and has interfered in the preexisting contracts that exist between Plaintiffs, its patrons and its allowance for CAP to utilize Taxiway Hotel.

341. Any closure of Taxiway H for more than temporary repairs and maintenance represents an imminent danger of serious, permanent, and irreparable damage to the public health and safety of the residents of Suffolk County and seriously cripple the emergency response capability of first responders in times of general crisis resulting from natural disasters such as hurricanes or local catastrophes such as fires and explosions.

342. There are no equivalent facilities for the CAP and General Aviation tenants of the November Romeo property other than those provided by November Romeo and as such those tenants

face irreparable injury should access be denied by the Defendants to Taxiway Hotel from the NR property.

343. The Defendants stated "Because Plaintiffs' tenants are the only users of the Taxiway and it has no other practical utility to the Airport, the Town determined it would be unfair for other Airport users to bear the costs of the mandated repairs."

344. Defendants ignore that CAP uses Taxiway Hotel.

345. While the November Romeo property has residual economic value as a site for industrial operations, with access to Taxiway Hotel at a reasonable cost, the property has no value to General Aviation or such public service organizations as the CAP.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Ferdinand "Fred" Coste a resident of the Town of Islip and Suffolk County so unfortunate as to suffer economic loss, harm, and damage as a result of actions by the Town of Islip to limit the accessibility and use of Long Island MacArthur Airport (ISP) as a terminal destination and "hub" for General Aviation and the continued viability of ISP as an economic engine and employment generator for the residents of Eastern Long Island, NY, and Plaintiff November Romeo, LLC seek judgment:

AWARDING Plaintiff damages in an amount to be determined at a jury trial for past and continued violation of his constitutional rights, restriction of Social Property, threat and retaliation for speaking out on matters of great public concern;

DECLARING that Long Island MacArthur Airport (ISP) is an essential element of the Long Island Regional Economic System

DECLARING that full and unrestricted access to Long Island
MacArthur Airport (ISP) over Taxiway Hfrom the hangar,
storage, and maintenance facilities for light aircraft on the NR
Property located along the southeasterly boundary of the
airport on the West side of Lincoln Avenue is essential to the
continuing economic growth and development of Suffolk County
and Eastern Long Island, New York;

DECLARING that full and unrestricted access to Long Island
MacArthur Airport (ISP) from the hangar, storage, and
maintenance facilities previously approved by Town of Islip for
light aircraft on the NR Property located along the
southeasterly boundary of the airport on the west side of
Lincoln Avenue is essential to the search and rescue, public
safety, and law enforcement activities in Suffolk County.

DECLARING that the highest and best use of Taxiway H (Hotel) is to
support General Aviation as a regional economic resource and a
significant integral element of the Regional Economic System
— a regional economic determinant.

DECLARING that failure to permit reasonable unrestricted access to
Taxiway H (Hotel) as a route for General Aviation aircraft to
access the commercial runways of Long Island MacArthur
Airport (ISP) creates an imminent danger of  serious,
permanent, and irreparable damage to all the residents of the
Town of Islip and Suffolk County who depend upon the
accessibility and use of Long Island MacArthur Airport (ISP)
as a terminal destination and "hub" for General Aviation and
as an economic engine and employment generator for the
residents of Eastern Long Island and the Economy of Suffolk
County, New York.

DECLARING that failure to permit reasonable unrestricted access to Taxiway H (Hotel) as a route for General Aviation aircraft to access the commercial runways of Long Island MacArthur Airport (ISP) creates an imminent danger of serious, permanent, and irreparable damage to all the residents of the Town of Islip and Suffolk County who depend upon the aircraft and facilities at the NR Property in times of emergency.

DECLARING that Taxiway H (Hotel) is so vested with the public interest it has become "social property" and must be managed for the benefit of all the residents of the Town of Islip and Suffolk County without limiting the accessibility and use of Long Island MacArthur Airport (ISP) as a terminal destination and "hub" for General Aviation and the continued viability of ISP as an economic engine and employment generator for the residents of Eastern Long Island, NY.

IMPOSING a constructive trust or resulting trust in the public interest on Taxiway H (Hotel) for the benefit of aircraft operations originating at the NR Property or CAP;

DIRECTING Defendant Town of Islip to provide communications with FAA for which it claims justifies its pretextual punishment of Plaintiffs to ensure further compliance with Federal non-discrimination regulations and Grant Assurances;

DIRECTING Defendant Town of Islip to provide records responsive to the Litigation Hold Notice and denied by Defendants under the Freedom of Information Law because of said Litigation Hold Notice;

DIRECTING FAA (TO THE EXTENT IMPLICATED BY TOWN OF ISLIP) AND Defendant Town of Islip to provide suitable assurance to any CTTF operator requiring use of Taxiway H (Hotel) that such use will be permitted as long as the CTTF maintains its

operations subject only to the obligation to assuming the cost of maintenance and repair; and the provision of reasonable and appropriate liability insurance; and compliance with Federal non-discrimination regulations and Grant Assurances;

DIRECTING FAA is a necessary party and enjoining them from indirectly interfering or injecting the FAA from improperly influencing the Town of Islip and to the extent that the FAA has demands of the Defendants Town of Islip regarding Plaintiff's contractual relations and property rights, that the FAA BE ORDERED to Participate Directly in the negotiations reasonable and appropriate liability insurance; and compliance with Federal non-discrimination regulations and Grant Assurances;

All together with such other and further relief as this Honorable Court shall deem just, proper and equitable under the circumstances including the costs and  reasonable attorneys' fees of counsel representing the Plaintiffs.

DATED AT: Melville, NY
          April 3, 2023

/s/  Cory H. Morris /s/
THE LAW OFFICES OF CORY H. MORRIS
*Attorney for the Plaintiffs*
Office & P.O. Address
135 Pinelawn Rd, *suite* 250s
Melville, New York 11747
Phone: (631) 450–2515
EmailCory.H.Morris@protonmail.com
Victor John Yannacone, jr., *of counsel*
Emailbarrister@yannalaw.com