UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

FERDINAND L. COSTE, JR.,
*individually and on behalf of, November Romeo, LLC and all aircraft owners who are to be deprived of reasonable use and access to the Long Island MacArthur Airport, an entity and premises which the Town of Islip claims to be fee owner having offices,*

         Plaintiff,

   -against-

TOWN OF ISLIP,
ANGIE CARPENTER,
ISLIP TOWN BOARD MEMBERS JOHN C.
   COCHRANE, JR.,
MARY KATE MULLEN,
JOHN LORENZO,
JAMES P. O'CONNOR,
JORGE GUADRON, *each individually and in their own capacities,*
SHELLEY LAROSE ARKIN, and
JOHN AND JANE DOE # 1-10,

         Defendants.

-------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
23-cv-1339 (NJC)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

    Presently before the Court in this Section 1983-interference with contracts action, on referral from the Honorable Joan M. Azrack[1] for report and recommendation, is Defendants Town of Islip's, Shelley LaRose-Arken's (listed on the docket as "Shelley LaRose Arkin"), Angie Carpenter's, Islip Town Board Members John C. Cochrane, Jr.'s, Mary Kate Mullen's, Jorge Guadron's, John Lorenzo's, James

---

[1] On October 11, 2023, this case was reassigned to the Honorable Nusrat Jahan Choudhury, who currently presides.

P. O'Connor's and John and Jane Doe # 1-10s', (collectively, "Defendants") motion to dismiss with prejudice Plaintiffs Ferdinand L. Coste, Jr.'s ("Coste") and November Romeo, LLC's ("NR") (collectively, "Plaintiffs") Second Amended Complaint ("SAC" or "2d Am. Compl."), Docket Entry ("DE") [23],  for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  *See* Notice of Motion to Dismiss ("Defendants' Motion" or "Defs. Mot."), DE [54]; Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Defs. Mem."), DE [54-1].

By way of their Complaint dated February 21, 2023, DE [1], later modified by the Amended Complaint dated April 3, 2023, DE [18], and the Second Amended Complaint ("2d Am. Compl.") dated May 22, 2023, DE [30-1], Plaintiffs commenced this action on behalf of themselves and "all aircraft owners who are to be deprived of reasonable use and access to the Long Island MacArthur Airport," and now allege:  (i) the existence of a prescriptive easement;  (ii) violation of the Contracts Clause, U.S. Const. art. 1, § 10, cl. 1; (iii) general violations of 42 U.S.C. § 1983 ("Section 1983") ; (iv) First Amendment retaliation pursuant to Section 1983; (v) unconstitutional taking in violation of the Fifth and Fourteenth Amendments pursuant to Section 1983; (vi) denial of due process in violation of the Fifth and Fourteenth Amendments pursuant to Section 1983; (vii) an unconstitutional burden on the right to travel in violation of the Fifth and Fourteenth Amendments pursuant to Section 1983; and (viii) conspiracy.  *See* 2d Am. Compl., DE [1].

Defendants filed their motion to dismiss the Second Amended Complaint on February 9, 2024. *See* Defs. Mot. Plaintiffs oppose ("Plaintiffs' Opposition" or "Pls. Opp.") and request that the Court either convert Defendants' Motion to a motion for summary judgment or grant Plaintiffs leave to amend the complaint. *See* Pls. Opp., DE [55]. For the reasons set forth herein, the Court respectfully recommends granting Defendants' Motion in its entirety, dismissing the Second Amended Complaint with prejudice, and denying Plaintiffs' cross-motions for leave to amend and conversion of Defendants' Motion to a motion for summary judgment.

## I.   BACKGROUND

### A. Relevant Facts

The facts set forth herein are taken from the Second Amended Complaint and are accepted as true for purposes of this Report and Recommendation.[2]

#### a. The Parties and the Relevant Properties

Coste is a resident of the Town of Islip (the "Town") in Suffolk County. *Id.*, ¶ 2. He is the "Managing Member" of November Romeo, LLC ("NR"), a New York-based limited liability company that, in 2003, purchased a 4.77-acre commercial aircraft hangar facility (the "NR Property" or the "Property"), adjoining Long Island MacArthur Airport (the "Airport"). *Id.*, ¶¶ 18, 21. Plaintiffs purport to bring their claims on behalf of themselves and "all aircraft owners who are to be deprived of reasonable use and access to the Long Island MacArthur Airport," *see* 2d Am. Compl.

---

[2] At various points in the Second Amended Complaint, Plaintiffs confusingly allege that non-party Robert Schneider, the Town of Islip Deputy Commissioner of Aviation, ("Schneider") has stated certain facts. *See* 2d Am. Compl., ¶¶ 101, 102, 104, 107, 112, 115, 123, 220, 222, 225, 227, 233, 246, 250, 253. The purpose of this ascription is unclear.

at i (case caption), including tenants of the NR Property and the Long Island Group Headquarters of the Civil Air Patrol ("Civil Air Patrol"). *See id.*, ¶¶ 116, 119, 304, 308, 323-24. Plaintiffs allege that the Town of Islip Department of Aviation is directly responsible for the operation of the Airport and is a state actor. *Id.*, ¶¶ 159-60. Defendant Shelley LaRose-Arken leads the Town of Islip Department of Aviation as its Commissioner of Aviation and Transportation. *Id.*, ¶ 161. Defendant Angie Carpenter is the Town Supervisor. *Id.*, ¶ 146. The remaining individual defendants, (together with Shelley LaRose-Arken and Angie Carpenter, "the Individual Defendants") are members of the Town Board of the Town of Islip (or the "Town Board"). *Id.*, ¶¶ 147-57.

NR pays over $55,000 annually in real estate property taxes to the Town. *Id.*, ¶ 23. The NR Property is improved with airplane storage hangars, which were first constructed in 1969 and certified by the Town for their present use, as well as electric security gates. *Id.*, ¶¶ 24, 77. Plaintiffs claim that a proposal to acquire the NR Property has been in the Federal Aviation Administration ("FAA") budget several times over the last fifty years, but that past offers to sell the Property to the Town have been ignored. *Id.*, ¶¶ 81,82. Plaintiffs allege that the "highest and best" use of the NR property is to support General Aviation as a regional economic resource. *Id.*, ¶ 84.

According to Plaintiffs, the Airport is "a major element of the Long Island infrastructure" and "a regional economic engine upon which the well-being of the residents of Suffolk County depend to a substantial extent." *Id.*, ¶¶ 209, 210. The

Town of Islip Department of Aviation is directly responsible for the operation of the Airport, and both this Department and the Town Board manage and steward the Airport. *Id.*, ¶¶ 160-61. Plaintiffs argue that the Airport "is so vested with the public interest it has become 'social property'" and the Airport "must manage the property in the public interest[,] which in this case means facilitating access from the hangar area on the NR Property to the main runways of the airport." *Id.*, ¶ 212.

Plaintiffs allege that the Town is subject to FAA and Transportation Security Administration regulation, including safety, security and operational regulations, as well as obligations as a condition of accepting FAA grant funds. *Id.*, ¶¶ 220-22. Plaintiffs assert that non-party Robert Schneider, the Town Deputy Commissioner of Aviation, has stated that "[f]ailure to comply with the Federal Requirements could subject the Town to enforcement action by the FAA and ultimately could result in civil penalties, injunctions, and the loss of federal grant eligibility." *Id.*, ¶ 227.

NR purchased the NR Property from Paul C. Halstead ("Halstead") in 2003. *Id.*, ¶ 36. According to Plaintiffs, in 1968, Halstead negotiated airport access with then-Airport manager Alfred Warner, and in 1969 Halstead entered into a lease agreement (the "Halstead Lease"), for an annual sum of $1,100, payable in monthly installments, with the Town "to construct and use a taxiway for aircraft…with right of ingress and egress to [the Airport] over said premise by aircraft, personnel and maintenance equipment" from that property, which right extended to Halstead's "employees, guests[,] invitees and patrons and tenants." *Id.*, ¶¶ 31-34. The Second Amended Complaint states that the Halstead Lease was both ten years and twenty

years in length, and it is unclear to the Court which duration Plaintiffs intended to allege. *Id.*, ¶¶ 33, 44. In 1969, the Town constructed Taxiway H, connecting the threshold of the Airport's Runway 28 to the western border of the NR Property. *Id.*, ¶¶ 42-43. On June 20, 1990, Commissioner Werner wrote a letter to Halstead agreeing that the Town would continue to grant Halstead ingress and egress to the Airport via a paved taxiway, Taxiway H, pursuant to a month-to-month lease with a fee increasing annually. *Id.*, ¶ 47. The letter established rent for 1991 at $3,600 per year. *Id.*

Presently, NR owns a Commercial "Through-the-Fence" operation at the Airport, with physical access to the Airport via Taxiway H. *Id.*, ¶¶ 22, 25. Plaintiffs allege that the FAA has never "questioned or challenged" this operation. *Id.*, ¶ 91. According to Plaintiffs, no Defendant has ever "indicated that the through-the-fence Agreement under which NR is operating and under which its predecessor-in-interest operated was improperly structured." *Id.*, ¶ 236. Indeed, Plaintiffs and owners of light aircraft have used Taxiway H since 1969 to access the Airport. *Id.*, ¶ 25. Moreover, according to Plaintiffs, there is no available hangar space for these users at the Airport itself. *Id.*, ¶ 26.

Taxiway H connects the main aeronautical facilities (runways, *etc.*) of the Airport with the NR Property and six outdoor aircraft parking positions known as "tie-downs" on Airport property adjacent to the NR property. *Id.*, ¶ 48. Taxiway H is open to all Airport users, but is primarily used by NR and by the Civil Air Patrol. *Id.*, ¶¶ 50-51. Plaintiffs allege that there is a high demand for aircraft storage "in the

region." *Id.*, ¶ 53. According to Plaintiffs, failure to permit reasonable unrestricted access to Taxiway H as a route for General Aviation aircraft to access the commercial runways of the Airport creates an imminent danger of serious, permanent, and irreparable damage to all Town and Suffolk County residents who depend upon the accessibility and use of the Airport as a terminal destination and "hub" for General Aviation and as an economic engine and employment generator for the residents of Eastern Long Island. *Id.*, ¶ 85. According to Plaintiffs, Taxiway H has existed essentially in its present state for the last 52 years and shows no signs of collapse, erosion or drainage problems. *Id.*, ¶ 117. Plaintiffs allege that they possess a prescriptive easement to access Taxiway H because their use of Taxiway H from the NR Property has been open and notorious, continuous, exclusive and hostile to the unrestricted fee ownership of Taxiway H by Defendants. *Id.*, ¶¶ 215-18. Plaintiffs also allege that they perform a significant and necessary public service by providing hangar space and support at the NR Property for the light aircraft of General Aviation and furnishing them access to the Airport over Taxiway H through Plaintiffs' through-the-fence operation. *Id.*, ¶ 137.

### b. The Haberman Appraisal

In 2020, Plaintiffs commissioned from Michael Haberman and Associates an appraisal ("the Haberman Appraisal") of Taxiway H, analyzing lease fees for tenants at the Airport and two other airports, Gabreski Airport and Republic/Farmingdale Airport. *Id.*, ¶ 86. According to Plaintiffs, the Haberman Appraisal identified five comparable leases, ranging from 20 to 50 years in duration at rates between 38 cents

and 58 cents per square foot. *Id.*, ¶ 87. Based on this appraisal, the Town increased NR's fee to access to Taxiway H to 62 cents per square foot, for a total of $1,264.97. *Id.*, ¶ 88. The Second Amended Complaint does not specify whether this amount was a monthly or a yearly fee.

In March 2021, according to Plaintiffs, NR and the Town reached an informal, unwritten agreement whereby NR paid $1,220 monthly for use of Taxiway H, subject to annual increases via consumer price index adjustment, and $80 per month, per tie-down for use of each of the Town's six tie-downs on Airport property. *Id.*, ¶¶ 55-56.

### c. Repair of Taxiway H

According to Plaintiffs, the Town now demands that they improve Taxiway H according to federal regulatory standards, pursuant to a request from the FAA. *Id.*, ¶ 57. Plaintiffs allege, however, that Defendants have failed to: (i) present any plans or specification for this improvement approved by the FAA; (ii) allow Plaintiffs to negotiate with the FAA as to this improvement; or (iii) make information about the FAA's request available to the public or to Plaintiffs. *Id.*, ¶¶ 58-60. On August 3, 2022, the Town sent NR a letter from Danielle Antonucci, the U.S. Department of Transportation Airport Certification Safety Inspector to the Town ("The Antonucci Letter"), identifying 13 elements of Taxiway H that needed improvement. *Id.*, ¶ 61. According to Coste, the Antonucci Letter requested a plan to repair the Taxiway by December 31, 2022. *Id.*, ¶ 62. Plaintiffs then contacted engineering firm L. K. McLean Associates, LLC ("McLean Associates") on August 11, 2022, requesting a proposal for completing the FAA's required work. *Id.*, ¶ 63.

After receiving a proposal from McLean Associates, NR submitted it on August 19, 2022 to the FAA, *id.*, ¶ 64, whose representative responded that any repairs "must be proposed by, or under the auspices of, the Town." *Id.*, ¶ 65. On November 22, 2022, NR submitted a proposal to the Town for refurbishment of Taxiway H, in accordance with the Antonucci Letter, proposing that NR "[s]pot patch[ ] any problem areas; [s]aw cut and patch major cracks, if any; [s]aw cut existing asphalt to maintain existing grade. . . [a]sphalt cement minor cracks and seams; and [a]pply a 2" NYS 6F Asphalt mix over the entire area." *Id.*, ¶ 66. Plaintiffs allege that the Town, in rejecting this proposal, cited FAA Construction Standard FAA AC 150/5370-10H, which Plaintiffs do not describe but claim is only applicable to pavement serving aircraft heavier than that stored at hangars on the NR Property and is only mandatory for federally funded projects. *Id.*, ¶¶ 68, 69. The Town insisted that NR pay for the rehabilitation of Taxiway H and rejected NR's proposal to repave with a two-inch asphalt cap at its own expense. *Id.*, ¶¶ 111, 244. According to Plaintiffs, NR's proposal for rehabilitating Taxiway H is "preferable and more cost-effective" than the Town's proposal. *Id.*, ¶ 74; *see id.*, ¶¶ 291-92.

### d. *Plaintiffs' Discussions with the FAA*

Plaintiffs further allege that "Mr. Coste inquired of the FAA," on an unspecified date, *id.,* ¶ 272, "of Defendants['] actions, if any, individually and collectively, to address potential waste, misuse or potential illegality at [the Airport]." *Id.,* ¶ 273. Plaintiffs claim "[t]he FAA construed Mr. Coste's inquiry as a complaint and conveyed the same to Defendants." *Id.,* ¶ 271. Plaintiffs also made "Freedom of Information

Law" requests to Defendants at an unspecified time on unspecified subjects.  Id., ¶ 274.

Plaintiffs allege that "as part of an e-mail exchange with Fred Coste,[ ] on September 23, 2022, Janine Abyad, an FAA Civil Engineer/PFC Specialist is alleged to have said that the Town 'may be in violation of its grant assurances because it is not charging you high enough access fees' and [that the FAA] would be 'working with the airport to investigate the matter to ensure that the airport is in compliance with the grant assurances.'"  *Id.*, ¶ 246.  That same day, "Mr. Cohen, [an FAA employee], informed Mr. Coste that the rehabilitation of Taxiway H would have to comply with FAA regulations, including 'requirements for hold position signs, markings, pavement condition, and construction work, which are relevant to any proposal concerning the rehabilitation and/or reconstruction of Taxiway H,'"  and that "the Town could be in violation of the Federal Requirements if FAA determines the Town is 'charging you and/or your tenants too little vis a vis on airport tenants.'"  *Id.*, ¶¶ 249-50; *see* DE [54-4] at 1 (identifying "Mr. Cohen" as David Cohen, FAA employee) (incorporated into the Second Amended Complaint as explained below).  Plaintiffs allege that Mr. Cohen "reached out to the Town" regarding NR's operations and "expressed concern" about the lack of a "formal written agreement" between NR and the Town, as well as the potential insufficiency of the access fee NR paid to the Town.  *Id.*, ¶ 253.

*e.  The December 14, 2022 Term Sheet*

On December 1, 2022, the Town sent NR an invoice that increased the use fee for Taxiway H and the six tie-downs from $1,794.97 to $29,514.00 per month. *Id.*, ¶ 110. On December 14, 2022, the Town also presented Plaintiffs a Term Sheet (the "December 14, 2022 Term Sheet"), the key terms of which the Town indicated it had discussed with the FAA. *Id.*, ¶ 94. The contents of those discussions were not made public. *Id.*, ¶¶ 95, 96. The Term Sheet provided that Taxiway H would be rehabilitated in compliance with FAA Airport Design Standards to accommodate aircraft with a maximum takeoff weight of 12,500 pounds, and required NR to complete this work itself or reimburse the Town for this work and set access fee payments of $800 per hangar and $175 per tie-down space located on the NR Property, paid monthly, subject to increases "consistent with escalation clauses in on-airport leases." *Id.*, ¶ 97. Plaintiffs claim that counsel for the Town stated that any NR Access Agreement must contain provisions assuring that the "end users of [NR's] facility pay more than they would pay if they were operating on the airport." *Id.*, ¶ 98.

*f.  The December 22, 2022 Proposal*

On December 22, 2022, the Town proposed a new agreement and fee structure to NR consisting of three parts: (i) an agreement for the rehabilitation of Taxiway H; (ii) a lease for the on-Airport tie-down spaces using the NR Property for Airport access; and (iii) a through-the-fence access agreement. *Id.*, ¶ 100. Schneider told Plaintiffs that this proposal reflected the Town's "obligation to ensure that on-Airport

operators are not placed in an economically disadvantaged position relative to through-the-fence operators like [Coste]." *Id.*, ¶ 102. Plaintiffs allege that, with respect to through-the-fence arrangements, "the FAA suggests, but does not mandate, that the sponsor should execute a written agreement and ensure the 'fee to gain access to the airfield should reflect the airport fees charged to similarly situated on-airport tenants and aeronautical users.'" *Id.*, ¶ 239. According to the Second Amended Complaint, Plaintiffs and the light aircraft that use the NR Property do not compete with the fixed-base operators at the Airport, particularly because no hangar space is available at the airport to the aircraft that currently use the NR Property. *Id.*, ¶ 103. Plaintiffs claim that the FAA has neither taken nor threatened to take any action "against the Town . . . related to the activities of the Plaintiffs with respect to Taxiway H." *Id.*, ¶¶ 242-43.

The December 22, 2022, proposal included a new lease rate of 88 cents per square foot annually for each tie-down space on Airport property that NR leased, and a lease rate in the same amount, applied to the total area of the NR Property, for a through-the-fence access arrangement. *Id.*, ¶ 104. The Second Amended Complaint does not specify what total annual fee this rate represents. The parties agreed to this lease rate for the tie-down spaces, but the Second Amended Complaint does not indicate whether the parties agreed to this rate for the through-the-fence access arrangement. *Id.*, ¶ 115.

Then, on an unspecified date, The Town threatened action to limit access by barricading Taxiway H. *Id.*, ¶ 116. Plaintiffs claim that a statement made by

Schneider setting July 13, 2023 as the earliest possible date for closure of Taxiway H represents an approaching imminent threat of serious, permanent, and irreparable injury, damage, and harm from denying aircraft access to Taxiway H from the Airport. *Id.*, ¶¶ 123-24.

### g. *Offers to Buy the NR Property*

On January 12, 2023, the Town indicated its interest in purchasing the NR Property, subject to a formal appraisal, paid for by NR, of the Property's fair market value, which the Town estimated at between $1.5 million and $2 million. *Id.*, ¶ 112. Earlier, in December 2018, Good Deeds Development, which entity is not described, offered to purchase the NR Property for $4.25 million, contingent upon NR obtaining a new access agreement with the Town. *Id.*, ¶¶ 113-14.

### B. Procedural History

By way of their Complaint dated February 21, 2023, DE [1], later modified by the Amended Complaint, DE [18], and the Second Amended Complaint, DE [30-1], Plaintiffs commenced this action alleging: (i) the existence of a prescriptive easement; (ii) violation of the Contracts Clause, U.S. Const. art. 1, § 10, cl. 1; (iii) general violations of 42 U.S.C. § 1983 ("Section 1983"); (iv) First Amendment retaliation pursuant to Section 1983; (v) unconstitutional taking in violation of the Fifth and Fourteenth Amendments pursuant to Section 1983; (vi) denial of due process in violation of the Fifth and Fourteenth Amendments pursuant to Section 1983; (vii) an unconstitutional burden on the right to travel in violation of the Fifth and Fourteenth Amendments pursuant to Section 1983; and (viii) conspiracy. *See* Compl. Defendants filed a letter requesting a pre-motion conference for their

anticipated motion to dismiss on May 15, 2023. *See* DE [24]. On May 22, 2023, Plaintiffs moved to amend the Complaint and filed a Proposed Second Amended Complaint. *See* DEs [30],[30-1]. Judge Azrack referred Defendants' anticipated motion to dismiss the Amended Complaint to this Court. *See* May 30, 2023 Electronic Order. The Court granted Plaintiffs' Motion to Amend and set a briefing schedule for Defendants' forthcoming motion to dismiss the Second Amended Complaint on August 9, 2023. *See* DE [36]. On October 10, 2023, the parties filed a Stipulation of Dismissal as to the FAA, *see* DE [39], which dismissal was So Ordered the next day. *See* October 11, 2023 Order.

Defendants filed their motion to dismiss the Second Amended Complaint on February 9, 2024 under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiffs lack Article III standing to bring their claims and that Plaintiffs fail to state a claim. *See* Defs. Mot. Plaintiffs oppose that motion and request that the Court either convert Defendants' Motion to a motion for summary judgment or grant Plaintiffs leave to amend the complaint. *See* Pls. Opp., DE [55]. For the reasons set forth below, the Court recommends granting Defendants' Motion in its entirety, dismissing the Second Amended Complaint with prejudice, and denying Plaintiffs' cross-motion for leave to amend.

## II.    LEGAL STANDARDS

### A. Motions to Dismiss under Fed. R. Civ. P. 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a federal court must dismiss a claim when it lacks jurisdiction over the subject matter of the action. *See* Fed. R. Civ. P. 12(b)(1); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is

properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). The party asserting subject matter jurisdiction has the burden to prove the Court's jurisdiction by a preponderance of the evidence. *See Vailette v. Lindsay*, No. 11-CV-3610, 2014 WL 4101513, at *3 (E.D.N.Y. Aug. 18, 2014). In deciding a motion to dismiss for lack of subject matter jurisdiction, the court must assume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *C.K. v. Bd. of Educ. of the Westhampton Beach Sch. Dist.*, 185 F. Supp. 3d 317, 324 (E.D.N.Y. 2016).

### B. Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. But a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)).  Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Further, on a motion to dismiss, the court may consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, i.e., documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted).  A complaint incorporates a document by reference when it "makes a clear, definite, and substantial reference to the document," *Serrata v. Givens*, No. 18-CV-2016, 2019 WL 1597297, at *3 (E.D.N.Y. Apr. 15, 2019) (internal citation omitted), or quotes heavily from a document.  *See, e.g., My Mavens, LLC v. Grubhub, Inc.*, No. 20-CV-4657, 2023 WL 5237519, at *3 (S.D.N.Y. Aug. 14, 2023); *Tavenner v. Int'l Bus. Machines Corp.*, No. 21-CV-6345, 2022 WL 4449215, at *2 (S.D.N.Y. Sept. 23, 2022), *aff'd*, No. 22-2318, 2023 WL 4984758 (2d Cir. Aug. 4, 2023).  A document that has not

16

been incorporated by reference may nevertheless be "integral" to the complaint if the complaint "relies heavily upon its terms and effect." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal citation omitted).

Dismissal with prejudice is appropriate . . . where "'[t]he problem with [plaintiff's] causes of action is substantive' such that amendment would be futile," *Owoyemi v. Credit Corp Sols. Inc.*, 596 F. Supp. 3d 514, 521 (S.D.N.Y. 2022) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)), or where plaintiffs have already had "one opportunity to amend their complaint" and "it is unlikely that the deficiencies raised with respect to the Amended Complaint were unforeseen by plaintiffs when they amended." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014).

## III.    DISCUSSION

### A.  Plaintiffs' Article III Standing

Initially, Defendants move to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiffs have failed to allege injury-in-fact and therefore lack Article III standing.  Defs. Mem. at 10-11.

Under Article III of the United States Constitution, a federal court's jurisdiction is limited to "cases" and "controversies."  U.S. Const. Art. III, § 2.  "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 2203 (2021) (citation omitted).  If a plaintiff in federal court lacks Article III standing, that court lacks federal subject matter jurisdiction.  *See*

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 433 F.3d 181, 198 (2d Cir. 2005).

To maintain Article III standing, a plaintiff must establish: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423, 141 S. Ct. at 2203; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136-37 (1992). "A person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion,* 594 U.S. at 435, 141 S. Ct. at 2210.

"It is well established that 'a plaintiff must demonstrate standing for each claim he seeks to press.'" *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S. Ct. 1854, 1867 (2006)). "Thus, with respect to each asserted claim, '[a] plaintiff must always have suffered a distinct and palpable injury to himself.'" *Id.* (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100, 99 S. Ct. 1601, 1608 (1979)). "To successfully plead injury-in-fact, a plaintiff must only clearly allege facts demonstrating that she had a legally protected interest in a manner that is concrete and particularized and that a defendant invaded that interest." *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018) (internal citations omitted). A plaintiff may bring a claim on behalf of a third party—in this case, on behalf of NR Property tenants and

18

the Civil Air Patrol— where the plaintiff can demonstrate "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008) (citing *Kowalski v. Tesmer*, 543 U.S. 125, 130, 125 S. Ct. 564, 568 (2004)).

Applying these standards, Plaintiffs have demonstrated that they have Article III standing to bring each of their claims on behalf of themselves, but not their tenants or the United States Civil Air Patrol. *See TransUnion LLC*, 594 U.S. at 423, 141 S. Ct. at 2203. The pleading threshold for establishing an injury-in-fact for purposes of standing is lower than that for surviving a motion to dismiss for failure to state a claim. *See Harry*, 889 F.3d at 110. "Unless an allegation of injury is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy,' . . . the mere fact that it 'raises a federal question...confers power [on a federal court] to decide that it has no merit, as well as to decide that it has.'" *Id.* at 111 (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89, 118 S. Ct. 1003, 1009 (1998); *Montana–Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 249, 71 S. Ct. 692, 694 (1951)).

Plaintiffs have alleged in support of their constitutional claims: (i) that closure of Taxiway H is imminent, *see* 2d Am. Compl., ¶ 124; (ii) that Defendants have "imposed a 1,500% percent [*sic*] increase in rent" in retaliation for Plaintiffs' protected speech, *id.*, ¶ 272; (iii) that the imminent closure of Taxiway H interferes with

Plaintiffs' "protected property interest in access to Taxiway H," *id.*, ¶ 283; (iv) that this access will imminently be denied without "any meaningful notice [or] a pre-deprivation hearing," *id.*, ¶ 295; and (v) that the denial of this access will "deprive Plaintiffs . . . of their Constitutional right to travel." *Id.*, ¶ 304. These allegations suffice to confer power on a federal court to decide whether Plaintiffs' claims have merit. *See Harry*, 889 F.3d at 111.

Plaintiffs, however, lack Article III standing to bring claims on behalf of non-party tenants of the NR Property or on behalf of the United States Civil Air Patrol, because Plaintiffs may not "rest a claim to relief on the legal rights or interests of third-parties." *Mental Hygiene Legal Serv.*, 13 F. Supp. 3d at 297. Plaintiffs have not alleged that any third party on whose behalf they attempt to bring suit lacks the "ability to protect its own interests," *W.R. Huff Asset Mgmt. Co., LLC*, 549 F.3d at 109, and thus fail to establish that this Court has jurisdiction over their causes of action with respect to third parties. *See id.*; *Morrison,* 547 F.3d 167 at 170. Accordingly, the Court recommends dismissing Plaintiffs' claims on behalf of tenants of the NR Property and on behalf of the Civil Air Patrol with prejudice for lack of Article III standing.

### B. Defendants' Exhibits to the Motion to Dismiss

Next, Defendants argue that Plaintiffs have incorporated four documents into the Second Amended Complaint, permitting the Court to consider them on this motion to dismiss: (i) the declaration of Robert Schneider ("Schneider Decl."), DE [20-2] and Defs. Mem., Ex. A; (ii) the Antonucci Letter, DE [1-22] and Defs. Mem., Ex. B;

(iii) an email exchange in September 2022 between Coste and several FAA employees, DE [54-4], Defs. Mem., Ex. C; and (iv) the  December 14, 2022 Term Sheet and accompanying email from the Town to Plaintiffs, DE [1-28] and Defs. Mem., Ex. D. *See* Defs. Mem. at 8-10.  Plaintiffs respond that Defendants' Motion should be converted to a motion for summary judgment because Defendants attach these materials to their Motion.  *See* Pls. Opp. at 7-8.

The Court recommends holding that Plaintiffs have incorporated by reference the Schneider Declaration, *see* Defs. Mem., Ex. A, the Antonucci Letter, *see* Defs. Mem. Ex. B, the September 2022 email exchange between Coste and the FAA, *see* Defs. Mem., Ex. C, and the December 14, 2022 Term Sheet, *see* Defs. Mem., Ex. D, into the Second Amended Complaint.  The Second Amended Complaint extensively quotes the Schneider Declaration and explicitly attributes those quotes to Schneider. *See* 2d Am. Compl., ¶¶ 101, 102, 104, 107, 112, 115, 123, 220, 222, 225, 227, 233, 246, 250, 253; Defs. Mem., Ex. A.  Similarly, Plaintiffs make a "clear, definite and substantial reference" to the Antonucci Letter, providing the date, sender of, recipient of, and a block quote from this letter.  *See* 2d Am. Compl., ¶¶ 61-62; Defs. Mem., Ex. B; *My Mavens, LLC v. Grubhub, Inc.*, No. 20-CV-4657, 2023 WL 5237519, at *7 (S.D.N.Y. Aug. 14, 2023) ("The Amended Complaint refers to [an email thread] by date, sender, and recipient, and quotes from it. . . . Accordingly, this email thread is incorporated by reference in the Amended Complaint") (citing *S.E.C. v. Wey*, 246 F. Supp. 3d 894, 929 & n.9 (S.D.N.Y. 2017)); *Serrata,* 2019 WL 1597297, at *3.  Further, Plaintiffs quote emails from FAA employees Janine Abyad and David Cohen to Coste

21

and provide the dates on which these emails were sent. *See id.*, ¶¶ 246, 249-50. Finally, Plaintiffs unambiguously identify and extensively quote the December 14, 2022 letter sent from the Town to Plaintiffs. *See id.*, ¶¶ 94-98. Accordingly, the Court recommends holding that Plaintiffs have incorporated these four documents into the Second Amended Complaint, which allows the Court to consider them on Defendants' motion to dismiss, and denying Plaintiffs' cross-motion to convert Defendants' Motion to a motion for summary judgment.

### C. Defendants' Motion to Dismiss Plaintiffs' Substantive Claims

For the reasons set forth below, the Court recommends that all of Plaintiffs' claims be dismissed on their merits with prejudice.

#### a. Plaintiffs' Prescriptive Easement Allegations

Plaintiffs allege that they possess a prescriptive easement for access to Taxiway H due to more than 50 years of use that is open and notorious, continuous, exclusive and hostile to the unrestricted fee ownership by Defendants of the taxiway. *See* 2d. Am. Compl., ¶¶ 215-19. The Court may exercise supplemental jurisdiction over Plaintiffs' prescriptive easement claim. *See* 28 U.S.C. § 1367(a). "'A federal court . . . adjudicating state law claims that are [supplemental] to a federal claim must apply the choice of law rules of the forum state,' which, here, is New York." *Doheny v. Int'l Bus. Machines, Corp.*, No. 23-CV-3962, 2024 WL 382142, at *16 (S.D.N.Y. Feb. 1, 2024) (citing *Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012)). "For claims that are wholly concerned with title to real property, New York's choice-of-law rules apply the law of the state where the property is located."

*Williams v. GMAC Mortg., Inc.*, No. 13-CV-4315, 2014 WL 2560605, at *3 (S.D.N.Y. June 6, 2014).  Accordingly, the Court applies New York law to this cause of action.

"A prescriptive easement requires use that is adverse (hostile) under claim of right, open and notorious, and continuous and uninterrupted for the necessary period. A presumption of adverse use in favor of the claimant exists when use has been shown to be open and notorious and continuous for the necessary period."  *Stickler v. Halevy*, 794 F. Supp. 2d 385, 401 (E.D.N.Y. 2011) (quoting *Di Leo v. Pecksto Holding Corp. et al.*, 304 N.Y. 505, 109 N.E.2d 600, 603 (1952)).  In New York, the "necessary period" is ten years.  *Koepp v. Holland*, 688 F. Supp. 2d 65, 91 (N.D.N.Y. 2010), *aff'd*, 593 F. App'x 20 (2d Cir. 2014)) (citing *Spiegel v. Ferraro*, 73 N.Y.2d 622, 625, 543 N.Y.S.2d 15, 16 (1989)).

The presumption of adverse use, however, does not attach where the use began as permissive.  Instead, a claimant of a prescriptive easement must expressly indicate to the owner of the at-issue property "a claim of right that is adverse to the owner's interest, at which time the claimant may then convert the permissive use to a hostile one."  *Bd. of Managers of Soho Int'l Arts Condo. v. City of New York*, No. 01-CV-1226, 2003 WL 21403333, at *23 (S.D.N.Y. June 17, 2003).

Plaintiffs' own allegations of permissive use foreclose their prescriptive easement cause of action.  Plaintiffs claim that an "indefinite[ ]" agreement existed between the NR Property's previous owner Paul Halstead and the Airport, allowing Halstead access to the Airport via Taxiway H for a monthly fee, and expressly claim that the "through-the-fence" agreement in place with the Airport, *see* 2d Am. Compl.,

23

¶¶ 22, 25, has existed "continuous[ly]" for more than 50 years. *See id.*, ¶¶ 47, 215. Further, Plaintiffs allege that the Town and NR agreed in March 2021 to adjust the price of access to Taxiway H. *Id.*, ¶ 55. Based upon these allegations, Plaintiffs demonstrate that their access to Taxiway H was at all times permitted by the Airport subject to an agreement between the parties. Accordingly, no prescriptive easement exists. *See Bd. of Managers of Soho Int'l Arts Condo.*, 2003 WL 21403333, at *23. As a result, the Court recommends dismissing this cause of action with prejudice.

### b. *Plaintiffs' General Section 1983 Claim*

Next, Defendants argue that Plaintiffs' "general" Section 1983 claim should be dismissed for failure to identify the constitutional rights violated. *See* Defs. Mem. at 13. The Court agrees. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of federal rights established elsewhere." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 597 (E.D.N.Y. 2017) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . .

42 U.S.C. § 1983. "To state a claim under Section 1983, a plaintiff must plausibly allege (1) that the defendants deprived him of a right secured by the Constitution or laws of the United States; and (2) that they did so under color of state law." *Id.* (internal citations omitted). Plaintiffs' "general" Section 1983 claim does not identify

a specific right "secured by the Constitution or laws of the United States."  *See* 2d Am. Compl., ¶¶ 266-67.  Accordingly, the Court recommends dismissing Plaintiffs' "general" Section 1983 cause of action with prejudice.

### c. *Plaintiffs' Interference with Contracts Claim*

Defendants further argue that Plaintiffs fail to state a plausible Contracts Clause claim because they do not identify any law passed by the Town that impairs their contractual rights, and because Plaintiffs do not identify the contracts or parties to those contracts at issue.  *See* Defs. Mem. at 25-27.  "The Contracts Clause restricts the power of States to disrupt contractual arrangements.  It provides that '[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts.'"  *Sveen v. Melin*, 584 U.S. 811, 818, 138 S. Ct. 1815, 1821 (2018) (quoting U.S. Const., Art. I, § 10, cl. 1).  "A prerequisite to any violation of that Clause is that the challenged action be a '[l]aw' or, as the Supreme Court has explained, that it be legislative in nature."  *Sullivan v. Nassau Cnty. Interim Fin. Auth.*, 959 F.3d 54, 61 (2d Cir. 2020) (citing *New Orleans Water-Works Co. v. Louisiana Sugar-Refining Co.*, 125 U.S. 18, 30–32, 8 S. Ct. 741, 747-48 (1888)).

Here, Plaintiffs have not alleged that Defendants' actions are "a law" or "legislative in nature."  *See Sullivan*, 959 F.3d at 61.  Further, Plaintiffs fail to identify any contract with which they claim Defendants have interfered.  *See* 2d Am. Compl., ¶¶ 256-63.  Accordingly, despite Plaintiffs having filed three versions of their Complaint, the Court is unable to determine the extent to which Defendants' actions impair a contractual relationship without any information about that relationship, including who the parties to the contract or what the contracts are.  *See Srabyan by*

*Srabyan v. New York*, No. 20-CV-3137, 2022 WL 866851, at *4 (E.D.N.Y. Mar. 23, 2022) (dismissing a Contracts Clause claim where "Plaintiffs identif[ied] no personally held contract whatsoever.") As a result, the Court recommends dismissing this cause of action with prejudice.

### d. *Plaintiffs' First Amendment Retaliation Claim*

Defendants also contend that Plaintiffs' First Amendment retaliation claim should be dismissed because the Second Amended Complaint fails to identify the relevant protected speech, among other reasons. To state a claim for First Amendment retaliation, a plaintiff must allege that "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015). "In order to satisfy the causation requirement, allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action." *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003) (internal citation omitted). Causation "may be alleged indirectly by, for example, alleging that the protected activity was followed by adverse treatment . . . or directly, by alleging direct evidence of retaliatory animus." *Stajic v. City of New York*, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016). In this regard, a cause of action must identify "specific dates, the number of conversations, or what was discussed," because a lack of such detail "prohibit[s] the Court from accurately determining the proximity of such speech to the retaliatory conduct at issue." *41 N. 73 W., Inc. v. Cnty. of Westchester, New York*, No. 08-CV-

4523, 2009 WL 10740050, at *10 (S.D.N.Y. Sept. 29, 2009); *see Raymond v. City of New York*, 317 F. Supp. 3d 746, 774 (S.D.N.Y. 2018) (describing the dispositive nature of the specific length of time that passes between the protected speech and the alleged retaliatory activity with respect to causation).

Here, Plaintiffs have failed to adequately plead a causal connection with either direct or circumstantial evidence. According to Plaintiffs, "Mr. Coste inquired of the FAA," 2d Am. Compl., ¶ 272, "of Defendants['] actions, if any, individually and collectively, to address potential waste, misuse or potential illegality at ISP," *id.*, ¶ 273, "[a]nd shortly thereafter Defendants imposed a 1,500% percent increase in rent[.]" *Id.*, ¶ 272. Plaintiffs also made "Freedom of Information Law" requests to Defendants at an unspecified time on unspecified subjects. *Id.*, ¶ 274. These vague allegations, devoid of specificity as to what was requested, and when, do not support a claim of First Amendment retaliation.

Defendants identified these deficiencies in the First Amended Complaint in their pre-motion conference letter filed on May 15, 2023. *See* DE [24] at 3 ("[Plaintiffs] provide only vague references to 'speech' and 'inquiries,' and they fail to allege a causal connection between any such speech or inquiries and the Town's conduct"). Plaintiffs have not corrected them. Accordingly, the Court recommends that this cause of action also be dismissed with prejudice. *See City of Pontiac Policemen's & Firemen's Ret. Sys.*, 752 F.3d at 188 (dismissing an amended complaint with prejudice where it was "unlikely that the deficiencies raised with respect to the Amended Complaint were unforeseen by plaintiffs when they amended").

e. *Plaintiffs' Unconstitutional Taking Claim*

Defendants next argue that Plaintiffs' unconstitutional taking claim fails because the Town was acting in its proprietary capacity and because Plaintiffs fail to state a plausible claim on the merits. "The Takings Clause of the Fifth Amendment provides that 'private property [shall not] be taken for public use, without just compensation.'" *Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 550 (2d Cir.), *cert. denied sub nom. Cmty. Hous. Improvement Program v. City of New York, New York*, 144 S. Ct. 264, 217 L. Ed. 2d 113 (2023) (quoting U.S. Const. amends. V, XIV, § 1). Relevant here, a regulatory taking "occurs 'when the government acts in a regulatory capacity' to infringe on an individual's property rights." *S. Nassau Bldg. Corp. v. Town Bd. of Town of Hempstead*, 624 F. Supp. 3d 261, 271 (E.D.N.Y. 2022) (quoting *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006)). Because Plaintiffs state that Defendants' actions "do[ ] not deprive Plaintiffs of all beneficial use of the NR Property," *see* 2d Am. Comp., ¶ 288, the type of taking Plaintiffs allege is a non-categorical taking. *Everest Foods Inc. v. Cuomo*, 585 F. Supp. 3d 425, 443 (S.D.N.Y. 2022) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 330, 122 S. Ct. 1465, 1483 (2002)). Courts apply the analysis set forth in *Penn Central Transp. Co. v. City of New York* in this context. 438 U.S. 104, 124-28, 98 S. Ct. 2646, 2659-61 (1978); *see Everest Foods Inc.*, 585 F. Supp. 3d at 443.

> To determine whether a non-categorical regulatory taking has occurred, requiring compensation, courts assess: (i) the economic impact of the regulation on the owner; (ii) the extent to which the regulation interferes with distinct investment-backed expectations; and (iii) the character of

the governmental action, including whether the action promoted "the health, safety, morals, or general welfare of the public" or amounted to a "physical invasion" of property.

*Everest Foods Inc.*, 585 F. Supp. 3d at 443 (quoting *Penn Central Transp. Co.*, 438 U.S. at 124-28, 98 S. Ct. at 2659-61).

Here, Plaintiffs allege that the imminent closure of Taxiway H constitutes a regulatory taking of the NR Property. *See* 2d Am. Comp., ¶¶ 287-89. But Plaintiffs have pled no facts that, if true, establish the economic impact on Plaintiffs that would follow Taxiway H's closure. *See Penn Cent. Transp. Co.*, 438 U.S. 104, 124, 98 S. Ct. 2646, 2659 (1978)). Plaintiffs proffer only conclusory allegations that this closure "will have a significant economic effect on the Region and the reasonable economic expectations of all the business interests in the Region," but as the Court has already explained, Plaintiffs do not have standing to bring causes of action on behalf of third parties. 2d Am. Comp., ¶ 289. Further, Plaintiffs allege that the Town sent NR an invoice raising the monthly access fee for Taxiway H from $1,794.97 to $29,514.00 and "insist[ed] that NR rebuild Taxiway H at their estimated cost of $150,000," but these figures do not represent the economic impact that the ***closure*** of Taxiway H, which is the imminent threat forming the basis of the alleged taking, would have on Plaintiffs. *Id.*, ¶¶ 290-91. Accordingly, this factor weighs against concluding that Plaintiffs have stated a claim for a regulatory taking. *See Greenport Gardens, LLC v. Vill. of Greenport*, No. 19-CV-2330, 2021 WL 4480551, at *12 (E.D.N.Y. Sept. 30, 2021) (economic-impact factor weighed against allowing a regulatory taking claim to

proceed where plaintiff did not "make any claims about the actual impact" of the fines constituting the alleged taking).

As to the second factor, the extent to which the regulation interferes with distinct investment-backed expectations, the Complaint contains no allegations setting forth Plaintiffs' investment-backed expectations. Plaintiffs point to "the reasonable economic expectations of all the business interests in the Region," *see* 2d Am. Comp., ¶ 289, but this allegation is too vague to establish this factor of the analysis. *See Greenport Gardens, LLC*, 2021 WL 4480551, at *12 ("'By omitting discussion of investment-backed expectations, the pleading fails to plausibly allege a taking under this factor'") (quoting *Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 401 (N.D.N.Y. 2020)). Accordingly, the second factor weighs against allowing Plaintiffs' takings claim to proceed.

With regard to the third factor, "a taking 'may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.'" *Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 402 (N.D.N.Y. 2020) (quoting *Penn Cent. Transp. Co.*, 438 U.S. 104, 124, 98 S. Ct. 2646, 2659 (1978)). Further, "government actions possess the character of regulatory takings when they visit 'affirmative exploitation' on affected parties, as opposed to 'negative restrictions.'" *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 168 (S.D.N.Y. 2020) (quoting *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 375 (2d Cir. 2006)).

Here, the alleged imminent closure of Taxiway H is not a "physical invasion" by any Defendant on Plaintiffs' property, because Plaintiffs do not allege that any Defendant need enter the NR Property in order to close down Taxiway H. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 2893 (1992) (describing physical invasions in the takings context). Moreover, such closure consists of a negative restriction, rather than an affirmative exploitation. *See Ruradan Corp. v. City of New York*, No. 22-CV-03074, 2023 WL 2632185, at *13 (S.D.N.Y. Mar. 24, 2023) (explaining that when a "government annuls something," such annulment is a negative restriction uncharacteristic of a regulatory taking) (citing *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 375 (2d Cir. 2006)). Accordingly, the third factor, like the first two, weighs against sustaining a cause of action for a non-categorical regulatory taking.

In light of the above, the Court recommends dismissal of this claim with prejudice. Plaintiffs have not meaningfully altered their pleadings with respect to this cause of action, *compare* Plaintiffs' First Amended Complaint, ¶¶ 299-311, *with* 2d. Am. Compl., ¶¶ 283-94, despite notice of its deficiencies, *see* Defendants' Pre-Motion Conference Letter, DE [24], at 3; *City of Pontiac Policemen's & Firemen's Ret. Sys.*, 752 F.3d at 188 (dismissing an amended complaint with prejudice where it was "unlikely that the deficiencies raised with respect to the Amended Complaint were unforeseen by plaintiffs when they amended"), and so further amendment would be futile.

*f.  Plaintiffs' Claim for Denial of Due Process*

Defendants further take the position that Plaintiffs have failed to plausibly allege a procedural due process claim.  Defs. Mem. at 21-22.  Because it is unclear whether Plaintiffs allege a substantive or procedural due process violation, the Court will consider both.  To state a claim for violation of substantive due process rights, a plaintiff must allege that "(1) [he or she] had a valid property interest . . . and that (2) the defendants infringed on the property right in an arbitrary or irrational manner."  *49 WB, LLC v. Vill. of Haverstraw*, 511 F. App'x 33, 34 (2d Cir. 2013) (internal citation omitted).  "'To have a property interest in a benefit, a person . . . [must] have a legitimate claim of entitlement to it.'"  *Davis v. New York City Hous. Auth.*, 379 F. Supp. 3d 237, 253 (S.D.N.Y. 2019) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972)).  A plaintiff bringing suit for violation of procedural due process must allege that:  "(1) he or she possesses a protected liberty or property interest, and (2) [he or she] was deprived of that interest without constitutionally adequate process."  *Garland v. City of New York*, 665 F. Supp. 3d 295, 304 (E.D.N.Y. 2023), *aff'd sub nom. Garland v. New York City Fire Dep't*, No. 23-663, 2024 WL 445001 (2d Cir. Feb. 6, 2024) (citing *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005)).

To state a claim for violation of substantive due process, a plaintiff must establish as a threshold matter that the property interest at issue is constitutionally protected.  *See Cunney v. Bd. of Trustees of Vill. of Grand View*, 56 F. Supp. 3d 470, 493 (S.D.N.Y. 2014).  The Court concludes that access to the Airport via Taxiway H

is not protected by the Constitution.  Plaintiffs specifically allege that no written agreement memorialized the parties' through-the-fence arrangement.  *See* 2d Am. Compl., ¶¶ 56, 93, 253.  Moreover, as explained above, Plaintiffs have not adequately alleged a prescriptive easement with respect to their access to Taxiway H.  This omission alone is sufficient to warrant dismissal.  Nevertheless, for the purpose of this Report and Recommendation, the Court assumes without deciding that Plaintiffs have alleged a valid contract between the parties granting Plaintiffs access to Taxiway H in exchange for a certain monthly fee.  *See id*., ¶¶ 55-56.  "The Second Circuit has noted that, 'although a public contract can confer a protectible benefit, not every contract does so.'"  *Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 381 (S.D.N.Y. 2014) (quoting *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994)).  A property right sufficient to state a claim for a substantive due process violation must be "fundamental,—*i.e.*, implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition[.]"  *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012) (citation omitted).  "Simple, state-law contractual rights, without more, are not worthy of substantive due process protection."  *Tessler v. Paterson*, 451 F. App'x 30, 33 (2d Cir. 2011) (citation omitted).  The property interest on which Plaintiffs base their substantive due process cause of action is, at best, a standard commercial contractual arrangement, and so again Plaintiffs fail to state this claim.  *See id*.

As with a substantive due process claim, a court analyzing a procedural due process cause of action begins with the threshold inquiry of "whether the plaintiff has

a property interest protected by the Constitution." *Gizzo v. Ben-Habib*, 44 F. Supp. 3d at 381 (S.D.N.Y. 2014) (citation omitted).  Such protection will attach only to a benefit to which a claimant has a "legitimate entitlement." *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972)).  "'[T]he type of interest a person has in the enforcement of an ordinary commercial contract often is qualitatively different from the interests the Supreme Court has thus far viewed as property entitled to procedural due process protection.'" *Id*. at 381-82 (quoting *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994)).

The Second Circuit has distinguished cases in which "procedural protection is sought in connection with a state's revocation of a ***status***, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits" from cases alleging merely "an ordinary contractual right." *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988) (emphasis in original); *see Grasson v. Bd. of Educ. of Town of Orange*, 24 F. Supp. 3d 136, 151 (D. Conn. 2014) (holding that a "simple commercial contract" between a town board and a property owner that "neither invoke[d] extreme dependence nor permanence" did not "create a right protected by due process.")  The Second Circuit has also explained that while where a statute imposes a right to contractual benefits, a plaintiff has "legitimate entitlement" to those benefits, an ordinary breach of

34

contract claim will not "rise to the level of a constitutionally protected property interest." *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 31 (2d Cir. 1994).

As explained above, Plaintiffs have alleged, at most, a property interest in access to Taxiway H pursuant to a commercial agreement between the parties. Plaintiffs have alleged no facts to show that they have "extreme dependence" upon this access—indeed, as explained above, Plaintiffs have not alleged any financial harm they will suffer if their access to Taxiway H is restricted—or that this agreement offered "permanent" access. *See Goldin*, 844 F.2d at 966. Moreover, Plaintiffs have not alleged that access to Taxiway H is "statutorily imposed." *Martz*, 22 F.3d at 31. Rather, Plaintiffs' property interest on which this cause of action is predicated is "an ordinary contractual right." *Goldin*, 844 F.2d at 966. Accordingly, the Court concludes that Plaintiffs have not met the threshold requirement to plead a cause of action for a procedural or substantive due process violation and recommends dismissal of this claim with prejudice.

### g.  *Plaintiffs' Right-to-Travel Claim*

Defendants contend that Plaintiffs also fail to state a claim for violation of their constitutional right to travel because: (i) Plaintiffs have alleged no law deterring travel; (ii) Plaintiffs have not alleged that they used Taxiway H to travel interstate; (iii) Plaintiffs are free to travel through the public portions of the Airport; (iv) Plaintiffs do not allege that the Town's primary objective was to impede travel; and (v) Plaintiffs have not alleged that the Town has used any classification to penalize the exercise of the right to travel. *See* Defs. Mem. at 23.

"'Freedom to travel throughout the United States has long been recognized as a basic right under the Constitution.'" *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 52 (2d Cir. 2007) (quoting *Dunn v. Blumstein*, 405 U.S. 330, 338, 92 S. Ct. 995, 1001 (1972)).  The right to travel embraces multiple components: "the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500, 119 S. Ct. 1518, 1525 (1999).  Only the first component is relevant in this case.  The precise textual origin of this right within the Constitution is not settled, but courts have invoked both the Privileges and Immunities Clause of the Fourteenth Amendment and the Equal Protection Clause to protect it.  *See id.,* 526 U.S. at 501, 119 S. Ct. at 1525; *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 100 (2d Cir. 2009) (quoting *Saenz*, 526 U.S. at 502–03, 119 S. Ct. at 1526; *Att'y Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 902, 106 S. Ct. 2317, 2320 (1986); *Mem'l Hosp. v. Maricopa County*, 415 U.S. 250, 269, 94 S. Ct. 1076, 1087-88 (1974)).  A regulation "implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses 'any classification which serves to penalize the exercise of that right.'" *Abadi v. Am. Airlines, Inc.*, No. 23-CV-4033, 2024 WL 1346437, at *54 (S.D.N.Y. Mar. 29, 2024) (quoting *Soto-Lopez*, 476 U.S. at 903, 106 S. Ct. at 2321).

The Court is skeptical that Defendants' threat to close Taxiway H qualifies for analysis under the constitutional right to travel at all. "Traditionally when discussing the right to travel—whether intrastate or interstate—a court will look at a particular statute or regulation, not a one-off incident." *Tew v. Town of Stony Point*, No. 22-CV-6148, 2023 WL 6146651, at *9, n.4 (S.D.N.Y. Sept. 20, 2023). Assuming the alleged imminent closure of Taxiway H qualifies as a regulation, "travelers do not have a constitutional right to the most convenient form of travel[, and] minor restrictions on travel simply do not amount to the denial of a fundamental right." *Abadi*, 2024 WL 1346437, at *55 (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007)). "'A law does not 'actually deter' travel merely because it makes it somewhat less attractive for a person to travel interstate.'" *Id.* (quoting *Pollack v. Duff*, 793 F.3d 34, 46 (D.C. Cir. 2015)). In *Town of Southold v. Town of East Hampton*, the Second Circuit concluded that a municipal law requiring a permit to construct a ferry terminal or operate a ferry within the Town of East Hampton and limiting the size and horsepower of ferries permitted to dock at that town did not deter travel because ferry operators remained free to travel unrestricted to other nearby destinations or to use unrestricted ferry types. 477 F.3d 38, 54 (2d Cir. 2007). Similarly, in *Frey v. Pekoske*, the court concluded that because a plaintiff could travel by car from Florida to New York rather than by airplane, a security screening at the airport amounted only to a "minor restriction," No. 18-CV-7088, 2021 WL 1565380, at *12 (S.D.N.Y. Apr. 21, 2021), and did not "amount to the denial of a fundamental right" in the right to travel context. *Town of Southold*, 477 F.3d at 54.

37

Here, Plaintiffs have not alleged that Defendants' threat to close Taxiway H "actually deters" travel. *Soto-Lopez*, 476 U.S. at 903, 106 S. Ct. at 2321. Plaintiffs are free to travel to their intended destinations by car, *see Frey*, 2021 WL 1565380, at *12, n.7, or via airplane out of the Airport's public terminal, using a commercial carrier. *See Town of Southold*, 477 F.3d at 54; *Abadi*, 2024 WL 1346437, at *55 (mask mandates of a given airline did not actually deter travel because they did not "prevent Plaintiff from traveling on another airline.")

As to the next factor, Plaintiffs have not plausibly alleged that impeding travel is the primary objective of Defendants' threat to close Taxiway H. 476 U.S. at 903, 106 S. Ct. at 2321. On the contrary, Plaintiffs allege that "the FAA warns that improperly structured through-the-fence arrangements may result in violations of Federal Requirements and the loss of federal grant eligibility," 2d Am. Compl., ¶ 235, and that the FAA warned the Town that it may be charging NR too little to access the Airport as compared to on-airport tenants. *Id.*, ¶¶ 246, 250; *see* Schneider Decl., ¶¶ 36, 37. Plaintiffs' allegations themselves point to the Town's desire to comply with FAA regulations as the "primary objective" of Defendants' threat to close Taxiway H, not impeding travel.

Finally, Plaintiffs have alleged no "classification which serves to penalize" the exercise of their right to travel. *Soto-Lopez*, 476 U.S. at 903, 106 S. Ct. at 2321; *see Abadi*, 2024 WL 1346437, *55 (policies that "appl[ied] in an 'evenhanded' way to all persons regardless of geography or length of stay in a particular location" did not use classifications that penalized the right to travel) (quoting *Town of Southold*, 477 F.2d

38

at 54). Accordingly, the Court concludes that the alleged imminent closure of Taxiway H does not implicate the constitutional right to travel and recommends dismissal of this claim with prejudice. *See Abadi*, 2024 WL 1346437, *55 (dismissing right to travel claim where the right to travel was not implicated according to the analysis described above); *Page v. Cuomo*, 478 F. Supp. 3d 355, 370 (N.D.N.Y. 2020) (dismissing right to travel claim where executive order did not burden the right to travel); *Annan v. State of New York Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016), *aff'd sub nom. Annan v. New York State Dep't of Motor Vehicles*, 662 F. App'x 85 (2d Cir. 2016) (same).

### h. Plaintiffs' Conspiracy Claim

Finally, Defendants argue that Plaintiffs have failed to assert a cause of action for conspiracy under 42 U.S.C. § 1985 ("Section 1985"). Defs. Mem. at 23-25. "Section 1985 claims require a showing of an underlying constitutional violation." *Singer v. City of New York*, 417 F. Supp. 3d 297, 328 (S.D.N.Y. 2019); *see Oliver v. Penny*, No. 21-CV-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (affirming dismissal of plaintiff's Section 1985 claim where underlying constitutional violation causes of actions had properly been dismissed because "[Section] 1985 'is a purely remedial statute' and requires an underlying violation of a federal right") (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376, 99 S. Ct. 2345, 2351 (1979)). Further, a conspiracy under Section 1985 must be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus," where such class is defined by "inherited or immutable characteristics." *Dolan v. Connolly*, 794 F.3d 290,

296 (2d Cir. 2015) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 101, 91 S. Ct. 1790, 1798 (1971)).  Nothing in Plaintiffs' allegations points to a class-based discriminatory animus, and, as set forth above, each of their claims fail on the merits.  Accordingly, the Court recommends dismissal of their Section 1985 conspiracy claim with prejudice.[3]

### D. Plaintiffs' Cross-Motion for Leave to Amend

Plaintiffs request leave to file a Third Amended Complaint if the Court grants Defendants' Motion.  *See* Pls. Opp. at 27-28.  As explained above, none of Plaintiffs' causes of action warrants the opportunity to replead.  *See Owoyemi*, 596 F. Supp. 3d at 521; *City of Pontiac Policemen's & Firemen's Ret. Sys.*, 752 F.3d at 188.  Plaintiffs have filed three versions of this complaint without alleging a substantive cause of action.  Accordingly, the Court concludes that further amendment would be futile, *see City of Pontiac Policemen's & Firemen's Ret. Sys.*, 752 F.3d at 188,[4] and recommends denying Plaintiffs' cross-motion for leave to amend.

### IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends granting Defendants' Motion in its entirety, dismissing the Second Amended Complaint with

---

[3] Because the Court recommends dismissing the Second Amended Complaint on the merits, it does not consider Defendants' arguments that Plaintiffs fail to adequately plead, under Section 1983, municipal liability or claims against the Individual Defendants in their individual or official capacities.  *See* Defs. Mem. at 11-13.

[4] In reaching this conclusion, the Court notes that Plaintiffs do not submit a proposed Third Amended Complaint, which would allow the Court to properly consider the merits of that proposed pleading. *See* 6 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1485 (3d ed. 2024) ("a copy of the amendment should be submitted with the motion so that the court and the adverse party know the precise nature of the pleading changes being proposed.")  For this additional reason, Plaintiffs' cross-motion should be denied.

prejudice, and denying Plaintiffs' cross-motions for leave to amend and to convert Defendants' Motion to a motion for summary judgment.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for all parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days.  *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:        Central Islip, New York
              June 26, 2024

                                  s/ Steven I. Locke
                                  STEVEN I. LOCKE
                                  United States Magistrate Judge